57 593
67h 501
57b 593
8ap501

---

THE PEOPLE, *ex rel.* David Wilbur *et al.* plaintiffs in error,
*vs.* JOHN EDDY *et al.* defendants in error.

Whenever a statute grants the power to do an act, with an unrestricted discretion as to the manner of executing the power, all reasonable and necessary incidents in the manner of executing the power are also granted.

Hence, although a statute is very summary in its grant of power, and fails to prescribe the form of proceeding to effect the desired object, it is not for that reason unconstitutional and void.

The legislature is not restricted in power, by the constitution, from controlling or changing the term, or the fees, of an office; or from abolishing an office created by it, altogether. The incumbent possesses no vested right in an office.

Where any commissioner, appointed under the act of March 31, 1856, authorizing certain towns to subscribe to the capital stock of the Albany and Susquehanna Railroad Company, (*Laws of* 1856, *ch.* 64,) and the acts amending

The People *v.* Eddy.

the same, (*Laws of* 1857, *ch.* 401; *Laws of* 1859, *ch.* 384,) to borrow money on the credit of the town, shall refuse or neglect to perform any part of the duties specified therein, his office will thereupon become vacant, and the county judge, upon the application of twelve resident freeholders, and upon proof of the fact to his satisfaction, has jurisdiction to appoint some other person to fill his place.

The act of 1859 (*ch.* 384) was in *pari materia* with the statutes of 1856 (*ch.* 64,) and of 1857 (*ch.* 401,) which authorized the appointment of commissioners and prescribed their duties; and they must all be construed together, as constituting one system, or one act.

And where, upon an application by twelve resident freeholders, to the county judge, and proof to him, he found, as facts, that commissioners appointed under the acts made a contract to sell stock subscribed for by them in the name of a town, on certain conditions,.one of which was, that the purchasers should first have the use of the stock, to be voted upon at a future election of directors of the corporation, for certain persons named in the contract of sale; that they refused to sell the stock for cash, at par; and that they sold the same on credit; and the county judge thereupon adjudged and determined that it was the duty of the commissioners, if they sold the stock, to sell it for cash, at par; that for their neglect or refusal to perform that duty their offices had become vacant; and that the defendants should be appointed to fill their places; *Held* that the findings were legitimate, and the adjudication right.

On a common law *certiorari*, the court may examine the case upon the merits, as well as upon the question of jurisdiction.

The statute obviously intended to intrust the power of deciding the question whether commissioners appointed thereunder have refused or willfully neglected to perform any part of the duties of their offices, to the county judge; and while his action, like the action of all other inferior officers, can be made the subject of review by the Supreme Court, on *certiorari*, the practice, in that respect, as to reviewing facts, is, by analogy, to be governed by the same rules as are observed on appeals and *certioraris* from inferior jurisdictions in other cases, viz: if there is evidence in the case which will, when fairly weighed, sustain the decision, this court will not interfere upon the ground that in their opinion a stronger case has been made out by the unsuccessful party.

Where it appears, from the return of a county judge to a writ of *certiorari*, that he was deceived and misled by the fraudulent pretences of the relators, upon a former motion, and that the decision thereon was obtained from him by such fraudulent pretences, such former decision will not be a bar to the second proceeding; and his final judgment may be reviewed upon the merits.

THIS case comes here upon *certiorari* to the county judge of Otsego, to review his proceedings in declaring va-

cant the offices of the relators, as commissioners of the town of Milford, in said county, to borrow money on the bonds of the town, to be invested in the stock of the Albany and Susquehanna Railroad Company; and in appointing the defendants to fill said offices. The proceeding was instituted upon the written application of twelve or more freeholders of said town of Milford, to appoint the defendants such commissioners, on the ground that the relators, who had been appointed to those offices, had refused or willfully neglected to perform certain of the duties required of them as such commissioners; and that their offices had thereby become vacant. The county judge, thereupon, on the 27th day of August, 1869, granted an order directing the relators to show cause, before him, on the 31st day of August, then instant, why the said offices should not be declared vacant, and the prayer of the petitioners granted. The relators appeared by counsel, and objected to the jurisdiction of the judge, and to his manner of proceeding. These objections were overruled. They further objected, that the same question had been once heard and determined against the application, for the same alleged cause; which was also overruled. Affidavits were then read on both sides; after which the motion was again made, to dismiss the proceedings upon each of the grounds before set up, which was also denied. On the 1st day of September, 1869, the county judge made an order, reciting that proof to his satisfaction had been produced before him, " that the relators had refused, or willfully neglected, to perform their duties as commissioners of the town of Milford, in refusing to sell or dispose of the capital stock of the said railroad company, purchased and owned by said town, for cash, according to law, for its par value, and in attempting to sell the same conditionally, on credit; whereby the office of such commissioners has become, and is hereby declared vacant; and I do therefore hereby, as such county

judge, pursuant to the authority given by the said acts, appoint said John Eddy and Amos F. Waters to be commissioners to carry into effect the purposes of the said act," &c. The other facts, material to be mentioned, will sufficiently appear in the opinion.

*E. Countryman,* for the relators.

*E. M. Harris,* for the defendants.

*By the Court,* POTTER, J. The proceeding which we are reviewing is entirely a statute proceeding. It confers somewhat unusual powers upon a judicial officer; and, like all other statute authority which may seem to be interfering with existing rights, must be strictly construed. The proceeding is instituted, and the order of the county judge made, under section 5 of chap. 384 of the laws of 1859, (p. 907,) which provides as follows: "In case any commissioner, under the act passed March 31, 1856, as amended April 14, 1857, shall refuse or willfully neglect to perform any part of the duties specified therein, or required by this act, his office shall thereupon become vacant, and upon *proof of the fact,* to the *satisfaction* of the county judge, * * he shall appoint some other person to fill his place, in the manner now provided by law."

General and well settled rules in the construction of statutes will, I think, be sufficient, if applied to this, to determine its meaning. One of which rules is, that the intention of the lawgiver is to be deduced from the whole and every part of a statute, to be taken and compared together; and the real intention, when ascertained, will always prevail over the literal. (*People* v. *Draper,* 15 *N. Y. Rep.* 532. 1 *Kent's Com.* 162.) The courts are, in the first place, to contemplate the law as it previously existed; next the necessity and probable object of the change, and then give such construction to the language used by the

The People *v.* Eddy.

law makers as to carry their intention into effect, so far as can be ascertained from the statute itself. (*Donaldson* v. *Wood*, 22 *Wend.* 395.) Though the intention of a statute is to be collected from the words employed, when words are not clear and explicit, the intent is to be gathered from the occasion and necessity of the law, and the causes which moved the legislature to enact it. (*Dwarris on Statutes*, 562.) And statutes are always to be construed with reference to the common law, and other statutes in force at the time of their passage. (*Howe* v. *Peckham*, 6 *How. Pr. R.* 229, 232.) It is to be presumed that the legislature intended to make no innovation upon existing statutes or common law, further than the case absolutely required, (1 *Kent's Com.* 464,) and words of common use are to be taken in their natural, plain, obvious and ordinary signification and meaning. (*Id.* 462.)

Guided by these rules, what was the intent of the statute in the grant of power to the county judge, in the section above cited? This statute was in *pari materia* with the statutes of 1856 (chap. 64,) and of 1857 (chap. 401,) which authorized the appointment of commissioners, and prescribed their duties; and they must all be read together, as constituting one system, or one act.

In the act of 1856, sections 1 and 10, power was given to the county judge, in case a *vacancy* should happen, by reason of *death, removal from the town, resignation, refusal to serve, or otherwise, to fill the vacancy*, upon the written application of twelve resident freeholders, &c. These provisions are not changed by the act of 1859. They remain in force, so far as relates to *vacancies* from those causes; and the act of 1859 was intended to add to the causes which produce a *vacancy*, viz: If any commissioner shall *refuse*, or willfully neglect *to perform*, any part of the duties specified therein, or required by this act, his office shall thereupon become *vacant*, and upon the proof of the fact to the satisfaction of the county judge, he shall appoint

some other person to fill his place. It is seen that no provision is made in these statutes, for the county judge to *take proof* of a vacancy, by reason of death, removal, resignation, or mere refusal to serve. These causes would be palpable, and obviously require no proof or judicial action; but when and after there has been an acceptance of the office by the commissioners, if there has been a refusal to perform any of the duties, or a willful neglect to perform such duties, the public interests suffer more than if there was a vacancy for any of the other causes. There would be an incumbent, not only useless, but actually hurtful to the public interest, and the amendment is made for such a contingency, by invoking judicial action upon the case. This statute, it is true, is very summary in its grant of power, and fails to prescribe the form of proceeding to effect the desired object; but it is not for this reason unconstitutional, or void. Whenever a statute grants the power to do an act, with an unrestricted discretion as to the manner of executing the power, all reasonable and necessary incidents in the manner of exercising the power are also granted. The act, in itself, confers a power not more summary in its nature, nor does it involve more important interests, than that conferred upon justices of the peace by statute, in the removal of tenants of real estate. The one involves the right of possession of an office, with its benefits and emoluments, the other the possession of real estate, with its use and income. The legislature is not restricted in power by the constitution, from controlling or changing the term or the fees of an office, or from abolishing an office created by it, altogether. The incumbent possesses no vested right in an office. (*People* v. *Develin*, 33 *N. Y. Rep.* 273.) The law under which they entered upon the duties of their offices, is not a contract, express or implied. The statute in question, then, is to be considered as passed as a remedial statute, in view of existing defects in the law, and is to be construed in con-

nection with existing law, and as intended to change, not only existing statutes, but also the common law. We are therefore to look at the general scope and design of the law in question; to look at the evil intended to be remedied, and the benefit to be attained; and then so construe the law as to accomplish the object the legislature had in view in its passage. (22 *N. Y. Rep.* 88.) This object, it appears to me, is obvious. We cannot close our eyes to the common public intelligence of the day, as to notorious delinquencies in the agencies of railroad and other corporations, and as to abuse of official action. And we cannot read the amended act in question without the discovery that its provisions were made to meet either existing or probable future abuses, and to provide a summary method of disposing of one of that class of evils. The forum selected for this purpose, in theory at least, is a safe depository for the exercise of this power; as conservative, as intelligent, and as pure as any that could be named; and while it is, with humiliation, to be admitted, that even the judiciary, or exceptional members of it, have not escaped the public charge of being reached by the overshadowing influence of railroad corporations, through their agencies, yet it may safely be asserted that the danger arising from this source is only that to which history and experience has shown that all human agencies and institutions are subject—the passions and infirmities of man; that while the people, the sovereign power, may, by superior art and address of candidates for judicial position, sometimes commit mistakes in selection, the power remains in their hands to correct the error; and that even bad men, it is believed, if any such occupy judicial positions, are, in a degree, restrained from great mischief by a measure of pride for the judicial department, and an ambitious desire to avoid severe public criticism. These *obiter* remarks are not called forth by anything that appears, or is charged, in this case. On the contrary, there is an

evident appearance of intent fairly to adjudicate upon the question we are reviewing.

1. I assume, then, that the county judge of Otsego county, by virtue of the acts referred to, had jurisdiction of the question so placed before him; that this was the tribunal appointed by statute to determine whether the relators had refused to perform the duties of the office to which they had been appointed, and whether they had willfully neglected to perform such duties; and that he did determine such question.

He held and adjudged, in effect, as appears from his return to the writ, that it was the duty of the relators, as commissioners of said town, if they sold the stock, to sell it for cash at par. He found as a fact, in effect, that they made a contract to sell the said stock on certain conditions; one of which was, that the purchasers should first have the use of the stock to be voted upon at a future election of directors of the company, for certain persons in the contract named; that they refused to sell the stock for cash at par; and that they sold the said stock on credit.

If these findings are legitimate, and can be sustained, the adjudication is right; if they are not, the order should be reversed.

Upon the authority of the case of *The People* v. *The Board of Police*, (39 *N. Y. Rep.* 506,) and *The People* v. *Board of Assessors of Albany*, (40 *N. Y. Rep.* 154,) and the authorities cited therein, it will now become our duty to examine the case upon the merits, as well as upon the question of jurisdiction, which we have examined. The statute obviously intended to intrust the power of deciding the question, whether these officers had refused to perform any part of the duties of their offices, and whether they had willfully neglected to perform any part of such duties, to the county judges; and while their action, like the action of all other inferior officers, can be made the subject of review by this court, on *certiorari*, I apprehend

that the practice in this respect, as to reviewing facts, is, by analogy, to be governed by the same rules as are observed in appeals and *certiorari* from inferior jurisdictions in other cases, viz., if there is evidence in the case which will, when fairly weighed, sustain the decision, this court will not interfere upon the ground that even in their opinion a stronger case has been made out by the other party. (*Stryker* v. *Bergen*, 15 *Wend.* 492.) What I understand to be the rule, and our duty to examine now, in all cases on *certiorari*, is, 1st. As to jurisdiction. If this is possessed: 2d. The court will reverse, if the moving party, upon their own showing, fail legally make out their case. (*Ehel* v. *Smith*, 3 *Caines*, 187. *Townsend* v. *Lee*, 3 *John.* 435.) 3d. Where the testimony fails to support the matter charged. (*Dodge* v. *Coddington, Id.* 146.) But, 4th. Where some evidence is given to support the charge, however light, if judgment be given thereon, (*Brown* v. *Wild*, 12 *John.* 455;) and where there is evidence upon the merits, on both sides, (*Trowbridge* v. *Baker*, 1 *Cowen*, 251,) the court will not reverse unless the case be one in which the weight of evidence is very greatly preponderating, or is so strikingly so as to create the suspicion of injustice, arising from prejudice or passion. In this case, as we have said, the relators were under no imperative duty to sell the stock in question, although good policy would seem to require a sale. There was no unwillingness on the part of the commissioners to sell, because they did negotiate a contract of sale. There is evidence of an offer to purchase the stock at par, on the 5th August, 1869, and of their refusal so to sell; and there is also evidence that prior to that time the stock had been regarded as not worth fifty per cent upon its par value. There is evidence of their agreement, afterwards, to sell the same stock on certain conditions, one of which was that it should be voted on, for the election of specified individuals for directors of the railroad company; and this condition, beside being an ille-

gitimate condition, was in effect a sale on time or credit, and not what is understood to be, and as the statute must be construed to mean, a sale for cash. True, there is strong conflicting evidence, and evidence of good faith on the part of the relators, but its weight has been adjudged by the county judge; and if we differed with him in his conclusions, it would not be a sufficient legal reason to reverse his judgment.

I have been most embarrassed by the point raised, that the first hearing of this case, and the dismissal of the proceeding, is a bar to the last one.

I think the cases of *White* v. *Coatesworth*, (6 *N. Y. Rep.* 137,) and *Demarest* v. *Darg*, (32 *id.* 281,) are conclusive to sustain this objection, unless the decision is brought within the case of the *State of Michigan* v. *Phœnix Bank*, (33 *N. Y. Rep.* 9, *and cases cited*,) where it was held that any fraudulent conduct of parties, in obtaining a decision or judgment, the court will take cognizance of, and then determine the case as the ends of justice may require. The return of the county judge in this case, I think, clearly indicates that in his view the relators had put their affidavits in such form as to mislead and deceive him as to their action; and he seems to place his conclusion upon that ground. If this was the basis of action of the county judge, his decision can be sustained; otherwise not. The language of the return is susceptible of this construction, and it seems to me that the facts would authorize such a view. The affidavits of the relators omit the particulars of the terms of the contract they claimed to have made. This it was easy to state. On the trial, the counsel for the applicants called for the production of the contract which the relators had made, on their agreement to sell the stock, and which, by the judge's order, they were required to produce on the hearing, and which they did not produce. In the affidavit of the relators, of the date of 7th June, the only material fact stated in it was, that they had sold the stock at par. This omis-

The People v. Eddy.

sion, while it may have misled the county judge on the first hearing, may, with further explanations, and further evidences of intent on the part of the relators, have satisfied the county judge of bad faith, perhaps fraud. It was held, in the Court of Appeals, in 1865, in an unreported case of the *N. Y. Exchange Co.* v. *De Wolf*, (31 *N. Y.* 273,) "that whether the means of fraud be oral or in writing, whether executed by the parties with all the solemnities of a deed, under seal, and by due form of acknowledgment, or even by judgment, stamped by the judicial sanction of a court, if a party have been induced to enter into the one, or to execute the other by the fraudulent devices of the party who thus secures the advantage, the law, when invoked, declares the whole transaction a nullity." In *Gallatin* v. *Erwin*, (*Hopkins*, 54,) Chancellor Sanford said that the most odious of all frauds was a fraud practiced upon a court of law; and he held a judgment of the Supreme Court void for the fraudulent circumstances attending the proceedings in obtaining it. In *Kennedy* v. *Daley*, (1 *Sch. & Lef.* 355,) Lord Chancellor Redesdale held that a decree obtained by fraud and imposition shall have no effect. See the cases cited in *State of Michigan* v. *Phœnix Bank*, (33 *N. Y. Rep.* 9,) all to the same effect; and for fraud and imposition, judgments can be reviewed collaterally. I am inclined to the opinion that the return of the county judge is based upon his having been deceived and misled by the fraudulent pretenses of the relators upon the first motion, and that his decision thereon was obtained from him by such fraudulent pretenses. If I am right in this, the former decision was not a bar to this proceeding; and that his final judgment may be reviewed upon the merits. Upon the whole, I am for affirming the order of the county judge, without costs to either party.

Order affirmed.

[Third Department, General Term, at Elmira, September 6, 1870. *Miller*, P. J., and *Potter* and *Parker*, Justices.]