THE TOWN OF MOUNT MORRIS, Respondent, *v.* JOHN KING, Individually and as Trustee, and Another, Appellants.

*Equity action — laches not available on a demurrer to the complaint — provision for a forfeiture strictly construed.*

While a court upon a trial of the issues of fact in an equity action may find that a corporation has rested upon its rights for so many years and that its claim has become so stale that it will refuse relief, still, upon a demurrer in which a question of law only is raised, it must sustain the complaint.

Forfeiture is not favored by law, and the provisions of an agreement upon which it is based must be strictly construed.

APPEAL by the defendant, John King, individually and as trustee, and another, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 13th day of September, 1893, upon the decision rendered on the trial of the issues raised by a demurrer at the Monroe County Special Term.

*E. C. Sprague*, for the appellants.

*W. A. Sutherland*, for the respondent.

HAIGHT, J.:

The demurrer is upon the grounds that there is a defect of parties plaintiff or defendants and that the complaint does not state facts sufficient to constitute a cause of action. The complaint,

among other things, alleges that the Avon, Geneseo and Mount Morris Railroad Company was and is a railroad corporation duly created by and under the laws of this State for the purpose of constructing and operating a railroad from the town of Avon in the county of Livingston to a point in the town of Mount Morris in said county; that it had constructed its road and had issued 2,250 shares of its capital stock of the par value of $100 each; that the town of Mount Morris had aided in such construction to the extent of $25,000, and had issued its bonds therefor, and had received in return therefor 250 shares of such capital stock; that on the 27th day of December, 1871, the Avon, Geneseo and Mount Morris Railroad Company leased its railroad, together with all its rights, easements, powers and privileges in connection therewith and the appurtenances thereto, to the Erie Railway Company for and during the unexpired term of its charter, and in and by such lease the former company undertook with the latter, as a part consideration therefor, to cause to be transferred to the president of the latter company, as trustee, for its use, the 250 shares of stock held by the plaintiff; that in pursuance of that agreement, and simultaneously therewith, the railroad commissioners of the plaintiff, holding such stock for the town, transferred the same to Jay Gould, as trustee for the latter company. It is alleged that this transfer was without consideration; that the New York, Lake Erie and Western Railroad Company has succeeded to the rights of the Erie Railway Company, and that John King, as its president, now holds such stock in trust for it. The complaint demands judgment that the defendant, John King, individually and as trustee, be adjudged and decreed to execute an assignment of the certificate of stock to the plaintiff and to surrender up the same, and that an accounting be had of the dividends received thereon, etc. The theory upon which this branch of the complaint is prosecuted is that the railroad commissioners of the town had no power to give away the stock of the railroad company owned by the town and held by them as its trustees, and that their act in so doing was *ultra vires;* that Jay Gould, in taking a transfer of the stock from them, and those who have succeeded to his interest, are in law deemed to hold the same as trustees for the town.

On behalf of the defendant it is claimed that the transfer of the

stock by the railroad commissioners being _ultra vires,_ an action at law could at once have been maintained, either by the town or a taxpayer thereof, to recover the same back, or for its conversion; but that in neglecting to do so, and waiting until the Erie Railway Company had performed its covenants under the lease, among which was a provision that it should put the road into first-class repair and operate the same; and resting upon its rights from December, 1871, until June, 1892, upwards of twenty years, that a court of equity would not, at this late day, interfere with a contract which has so long been relied upon and executed by the parties; and in support of this contention our attention is called to the authorities bearing upon that subject. It is quite possible that upon the trial of the issues of fact, a court of equity, in the exercise of the judgment and discretion vested in it, may sustain the appellants' contention in this regard. But we are now reviewing the determination of a court of law upon an issue of law in which a purely legal proposition is presented not involving the judgment and discretion of the court. Whilst the court upon a trial of the issues of fact may find that the plaintiff has rested upon its rights for so many years, and that its claim has become so stale that it will refuse relief, still upon a demurrer in which a question of law only is raised it must sustain the complaint.

It is further alleged in the complaint that the defendant company has neglected to keep the covenants of its lease, and that the plaintiff is now entitled to recover the stock by reason of such neglect. It was also alleged that the Erie and Genesee Valley railroad connected with the Avon, Geneseo and Mount Morris road; that its road had been leased to Lauren C. Woodruff, and by him leased to the Erie Railway Company, and that by the terms of that lease the road was to be operated by the latter company, which was also to build a branch connecting it with its main line at Burns; that it failed to fulfill its covenant in that regard, and that in 1891 it also ceased to operate the Avon, Geneseo and Mount Morris railroad from the village of Mount Morris to the town line, a distance of about two miles. The provision under which this claim is sought to be maintained is as follows: that "The party of the first part (which is the Avon, Geneseo and Mount Morris Railroad Company) further agrees that in consideration of the premises and also in con-

sideration of the covenants of the agreement between the party of the second part hereto (which is the Erie Railway Company), and Lauren C. Woodruff, as lessee of the Erie and Genesee Valley railroad, it will simultaneously with the execution of this agreement and lease, transfer, or cause to be transferred and delivered, to the president of the Erie Railway Company, Jay Gould, as trustee, for the said party of the second part, 250 shares of the par value of twenty-five thousand dollars ($25,000) of the capital stock of the said Avon, Geneseo and Mount Morris Railroad Company now held by the town of Mount Morris   *   *   *   which stock shall be held by the said trustee for the benefit of the party of the second part so long as the second party shall retain possession of said demised premises and continue to perform the conditions of this agreement and lease; but in case of the forfeiture of this lease and the repossession of the said demised premises by the party of the first part, then and it is hereby mutually agreed that in that case the said capital stock of said Avon, Geneseo and Mount Morris Railroad Company held by said trustee shall become forfeited and shall be retransferred to the original holders thereof." It will be observed that whilst the Woodruff lease of the Erie and Genesee Valley railroad is referred to as a part of the consideration under which the town transferred the stock to Gould in trust for the Erie Railway Company, no provision is contained in the lease by which the town is given the right to recover back the stock because of a failure to carry out the provisions of the Woodruff lease.   As we have seen, the Erie and Genesee Valley railroad was a connecting line.   The operation of it in connection with the Avon, Geneseo and Mount Morris railroad, giving the citizens of the town the benefit of communications with towns upon the line of the former as well as that of the latter road, and the extension of the former to a point upon the main line of the Erie railway, which would afford another outlet to cities and towns in the west, might have operated as an inducement for the officers of the town to make the transfer in question.   But the Erie and the Genesee Valley railroad lease to the Erie Railway Company was an independent contract.   The town of Mount Morris was not a party thereto, and no agreement for forfeiture is based upon a breach of that agreement.

We are thus brought to a consideration of the alleged breach of the Avon, Geneseo and Mount Morris lease in not operating the road to the town line beyond the village of Geneseo. The provision is that the stock transferred by the town to the trustee of the Erie Railway Company is to be held by the trustee " so long as the second party shall retain possession of the said demised premises and continue to perform the conditions of this agreement and lease." If this provision stood alone there might be some doubt in reference to its meaning, and an argument might be made in support of the claim that the trustee was not to retain the stock after the lessee ceased to perform the conditions of the lease, notwithstanding the first clause provides that the trustee shall retain possession of the stock so long as the lessee retains the possession of the leasehold premises. But this clause has to be read and construed in connection with that which follows, which is, " but in case of the forfeiture of this lease and the repossession of said demised premises by the party of the first part, then it is hereby mutually agreed that in that case the said capital stock of said Avon, Geneseo and Mount Morris Railroad Company held by said trustee shall become forfeited and shall be retransferred to the original holders thereof." This is the clause of the agreement under which a forfeiture is provided for. Forfeiture is not favored in the law, and the provisions upon which it is based must be strictly construed. Thus construing the provisions, there must be not only a forfeiture of the lease but there must be a repossession of the demised premises by the Avon, Geneseo and Mount Morris Company in order to entitle the town to recover back the stock. Reading these provisions together it is quite evident that in preparing the lease the Erie Railway Company did not care to have a claim to recover back the stock made upon any of the trifling breaches of the contract that might be made in many ways, such as the failure to keep the road or some particular part thereof in as high a state of repair as the officers of the town might think it should be in, and limited the right to recover the stock to both an actual forfeiture of the lease and the repossession of the road by the lessor. It is, therefore, not apparent how a recovery could be had upon this theory, under the allegations of the complaint.

If the Avon, Geneseo and Mount Morris Railroad Company's lease has been forfeited, and it has taken repossession of the road, it

cannot be interested in the determination of any question involved in this litigation, and we do not understand that it would be a necessary party.

The interlocutory judgment appealed from should be affirmed, with costs, but with leave to the defendants to withdraw demurrer and answer over within twenty days upon payment of the costs of the demurrer and of this appeal.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Interlocutory judgment appealed from affirmed, with costs, with leave to the defendants to withdraw demurrer and answer over within twenty days upon payment of the costs of this appeal and of the demurrer.