(8 App. Div. 495)

## TOWN OF MT. MORRIS v. KING.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

1. EQUITY—LACHES—REMOVAL OF CLOUD FROM TITLE.

   A town issued bonds in aid of a railroad, and received therefor shares of stock of the railroad company. Afterwards another company proposed to lease the railroad, but required as the condition that the town should transfer such stock to it. Thereupon an order was duly granted by the county judge authorizing the town to sell the stock. *Held*, that an action by the town to compel the assignment to it of the stock which had been transferred pursuant to the order granted by the county judge was not an action to remove cloud on title, but was for the recovery of specific property, and the right of the town to equitable relief could be denied after 20 years had elapsed.

2. TOWNS—SALE OF RAILROAD STOCK.

   Under Laws 1869, c. 907, § 5, which authorizes towns, on the order of the county judge, to sell stock issued to it for bonds issued by the town

in aid of a railroad, but which does not in terms require the stock to be sold for cash, a transfer for a consideration other than cash is not void. People v. Eddy, 57 Barb. 593, distinguished.

Appeal from special term, Livingston county.

Action by the town of Mt. Morris against John King, individually and as trustee of the New York, Lake Erie & Western Railroad Company. The complaint was dismissed on the merits, with costs, and plaintiff appeals. Affirmed.

This action was begun June 23, 1892, to compel the defendant to assign to the plaintiff 250 shares of the capital stock of the Avon, Geneseo & Mt. Morris Railroad Company, which the plaintiff assigned to the predecessor of John King, December 26, 1871. The plaintiff now is, and since April 17, 1818, has been, one of the towns of the county of Livingston, in this state. 3 Rev. St. 520. It is conceded that, pursuant to chapter 907 of the Laws of 1869, the plaintiff, in 1870, duly issued bonds for $25,000 to aid in the construction of the Avon, Geneseo & Mt. Morris Railroad, and that August 24, 1871, said bonds were delivered to said railroad corporation in exchange for 250 shares of its stock, of the par value of $100 each, for which a certificate of stock was issued. In the autumn of 1871, negotiations were pending between the Avon, Geneseo & Mt. Morris Railroad Company and the Erie Railway Company in respect to the latter's leasing and operating the road of the former corporation. As a consideration for entering into the lease, the Erie Railway Company required that the shares of stock held by the plaintiff be assigned and transferred to it. In November or December, and before the 15th of December, 1871, a special town meeting of the taxpayers of the town was called, to determine whether the terms should be complied with. The object of the meeting and the merits of the question were discussed in the local newspapers of the county. At this meeting there were present three or four hundred citizens of the town, all of whom, except one, voted in favor of transferring the stock, as required by the Erie Railway Company. In December, 1871, a majority of the taxpayers of said town, representing a majority of the taxable property thereof, as shown by the last tax list or assessment roll, signed a petition to the county judge of the county of Livingston, setting forth that the town owned 250 shares of the capital stock of the Avon, Geneseo & Mt. Morris Railroad Company, a certificate for which was then held by the commissioners of the town. The petition contains the following clause: "And your petitioners further show that they believe it will be for the interest of said town that the said commissioners be authorized and empowered to dispose of said stock for such consideration as may be for the best interest of said municipal corporation, and also in consideration that the Erie Railway Company shall put the said Avon, Geneseo & Mount Morris Railroad in first-class order, and take a lease of said railroad company to run the same for the period of the unexpired term of the charter of the Avon, Geneseo & Mount Morris Railroad Company, to keep the same in first-class order, making the village of Mount Morris a point on said road for the benefit of said municipal corporation." December 15, 1871, the taxpayers' petition was presented to the county judge of the county of Livingston, who on that day made and entered an order which contains, among other provisions, the following: "I, Solomon Hubbard, county judge of Livingston county, hereby order that said commissioners aforesaid be empowered and fully authorized to sell said railroad stock aforesaid as, in their judgment, may be for the best interest of the said town of Mount Morris. I hereby also certify that said order is hereby made and granted upon the petition of a majority of the taxpayers of said municipal corporation, representing a majority of the taxable property thereof, as shown by the last tax list or assessment roll of said town of Mount Morris, in the county and state of New York aforesaid. And I further certify all the facts herein set forth have been duly proved before me to my satisfaction, this 15th day of December, 1871." December 26, 1871, the commissioners of the town executed an assignment of said 250 shares, and of the certificate under which they were held, to "Jay Gould, trustee for the Erie Railway Company," who, December 29,

1871, surrendered said certificate, with said assignment indorsed thereon, to the Avon, Geneseo & Mt. Morris Railroad Company, which issued a new certificate to "Jay Gould, as trustee," which was dated that day, and numbered 262. March 8, 1872, Jay Gould assigned and transferred certificate No. 262 to Hugh J. Jewett, as receiver, who, March 22, 1876, surrendered said certificate and assignment to said railroad corporation, and received a new certificate for said shares in his name as receiver. May 10, 1880, said Hugh J. Jewett, as receiver, assigned said shares to himself as president, and the certificate was surrendered to said railroad corporation, and a new certificate for said shares was issued to Hugh J. Jewett, as president. February 10, 1885, Hugh J. Jewett transferred said shares to the defendant, John King, as trustee, who surrendered said certificate and received a new one therefor, under which said shares are now held by said John King, as trustee for the New York, Lake Erie & Western Railroad Company, which has succeeded to the rights of the Erie Railway Company in said shares, and in and to the railroad of the Avon, Geneseo & Mt. Morris Railroad Company. December 27, 1871, the Avon, Geneseo & Mt. Morris Railroad Company and the Erie Railway Company entered into a contract by which the former leased to the latter its railroad for and during the full term of its charter, and for any extensions or renewals thereof which might be granted in consideration of the payment of 6 per cent. upon the capital stock of the first-named corporation, payable semiannually, and of the interest on $20,000 of the mortgage bonds of said corporation, together with $100 annually for the expense of maintaining its corporate existence. Thereafter the Erie Railway Company entered upon the possession of said railroad, and it and its successors have maintained and operated it from that time to the present.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

William A. Sutherland, for appellant.
George F. Brownell, for respondents.

FOLLETT, J.  The pleadings present an issue as to whether the lease between the Avon, Geneseo & Mt. Morris Railroad Company and the Erie Railway Company and the title of the successors of the latter corporation to the shares of stock have been forfeited by the alleged failure of the lessee and its successor to operate the road of the lessor in accordance with the terms of the lease; but the issue has dropped out of the case.  There is no finding of fact upon it, nor was there any request preferred by either party for a finding on this issue.  None of the findings of fact are challenged by the plaintiff, and no exception was taken in its behalf on the trial, and so this judgment must be reviewed upon the facts found by the special term.  However, this issue was determined adversely to the plaintiff when this case was before the late general term on an appeal from an interlocutory judgment overruling a demurrer to the complaint.  It was then held that there had been no forfeiture of the lease or of the right of the defendants to the shares transferred to their predecessor. 77 Hun, 18, 28 N. Y. Supp. 281.  The only ground for a recovery in this action presented by this record is that the sale of the shares made December 26, 1871, by the commissioners of the town, was void, under the fifth section of chapter 907 of the Laws of 1869, because the sale was not for cash.

Among other defenses interposed as a bar to this action are the 6, 10, and 20 years' statutes of limitations.  For the purpose of avoiding these defenses, the position is taken in behalf of the plain-

tiff that this is an action to remove a cloud upon its title, and that, so long as the cloud exists, the statutes of limitations do not run. In case a person is in the possession of property, claiming to be its owner, and another asserts that he has title thereto or a lien thereon, by virtue of a written instrument which, on its face, affects the title or creates a lien, such an instrument is a cloud on the title. A bill quia timet or an action to cancel the instrument may be maintained, which is an action to remove a cloud; but such an action is never an appropriate remedy for the recovery of property which the plaintiff has transferred and surrendered the possession of to the defendant or to his predecessor in title. Actions falling under the general head of "Equity Jurisprudence," known as "quia timet actions" (such as actions to cancel instruments and remove clouds), are purely preventive remedies for avoiding apprehended injuries which may be occasioned to the plaintiff's title by reason of some action which may be taken in the future by the defendant, under and by virtue of the instrument alleged to be a cloud. Fonbl. Eq. c. 1, § 8; Snell, Eq. (9th. Ed.) 728 et seq.; Story, Eq. Jur. § 692 et seq.; Pom. Eq. Jur. § 1398; 2 Am. & Eng. Enc. Law, 298. The case at bar is in no sense an action to remove a cloud on title, but it is an action for the recovery of specific property, and it is barred by the lapse of 20 years, since the cause of action accrued. If it be said—and it can be—that there are cases in this and other states brought for the recovery of property, and, incidentally, for the cancellation of instruments standing in the way of a recovery, which are called "bills quia timet" and "actions to remove clouds upon title," it may be answered that, upon an examination of those cases, it will be found that the names given to those actions were not important, and that they were loosely called "actions to remove clouds" or "bills quia timet," though in fact they were not such, but were actions for the recovery of property and for the cancellation of instruments standing in the way of a recovery. Again, an action in the nature of a bill quia timet, like an action for the specific performance of a contract, is not maintainable unless the equities of the plaintiff are clearly established, and the action is brought without unreasonable delay. There is no equity in the plaintiff's case. Before any steps were taken to sell the plaintiff's stock, a town meeting was called, which was largely attended. The terms of the sale were discussed, and it was voted with but one dissenting voice that the stock should be sold on the terms offered. After this an unquestioned majority of the taxpayers of the town, representing a majority of the taxable property thereof, petitioned the county judge of the county that the commissioners be authorized to sell the stock on the terms offered, which prayer was granted, and the sale openly and publicly made in pursuance of the order. After the lapse of 20 years, 5 months, and 27 days from the date of the transfer, this plaintiff brings this action to set aside its own voluntary transfer, on the ground that it was not authorized by the terms of the statute. There was no fraud in the transaction, no concealment, and the situation has been known to the officers of the town and to all its taxpayers during all these years. If the

plaintiff ever had a right to set aside this sale, it has slept so long upon that right, and has acquiesced in the situation for such a length of time, that a court of equity will grant it no relief.

It is urged that the sale of the stock was void because it was not made for cash.  Section 5 of chapter 907 of the Laws of 1869 (the act under which the town was bonded, the stock taken and sold) provides:

, "Such stock * * * purchased by said commissioners may be sold by them * * * only upon the order of the county judge of the county, made upon the petition of a majority of the taxpayers of said municipal corporation representing a majority of the taxable property thereof, as shown by the last preceding tax list or assessment roll; and the proceeds from such sale shall be forthwith paid by them to the treasurer (or other proper officer) of such municipal corporation, to be by him invested in a sinking fund, as hereinafter provided."

It is said that People v. Eddy, 57 Barb. 593, is a controlling authority for the position asserted by the plaintiff that the sale was absolutely void, and incapable of ratification.  That case arose under a different statute,—chapter 64 of the Laws of 1856, as amended by chapter 401 of the Laws of 1857, the sixth section of which provided.

"They [the commissioners] may dispose of such stock in their discretion to any purchaser or purchasers for cash; but shall not sell or dispose of such stock at less than par, except upon the written consent of a majority of the taxpayers of said town, their heirs or legal representatives, representing a majority of the taxable property of that town appearing upon the last assessment roll proof of which shall be by affidavits."

The section under which the sale in the case at bar was made does not in terms require that the stock of towns shall be sold by the commissioners for cash; and, besides, in this case, every interest in the town—the commissioners, the taxpayers, and the officers of the town—assented to this sale, have acquiesced in it for 20 years, and, if this question were an important one, it would be necessary to consider the difference between the two statutes, and the facts lying at the foundation of each case; also whether the statutory provision is simply a limitation on the power of the commissioners, or is a limitation on the power of the town.  The power to dispose of property is an incident of ownership, unless the owner is under some disability.  Had the commissioners, with the assent of the taxpayers and of the county judge, exchanged these shares for a site for a town house, or for other property which the town was authorized to acquire, would it be clear that such a sale was void, and could be set aside, after it had been acquiesced in for 20 years, and without restoring, or offering to restore, the consideration received?  But, as this case may be well decided upon other grounds, it is unnecessary to consider the one last suggested.

The judgment should be affirmed, with costs.  All concur.