<hr />

EBERTS v. PETERS.　(No. 108/94.)

(Supreme Court, Appellate Division, Third Department.　May 5, 1915.)

1. WATERS AND WATER COURSES ⚖═158—CONTRACTS—CONSTRUCTION—BREACH.

A contract, whereby defendant for a valuable consideration agreed that plaintiff might tap a pipe running from a spring on defendant's premises to a trough, and lay and maintain a pipe to her own premises, to supply water for domestic purposes, on condition that plaintiff would lay the pipes so that they would not freeze and would not permit the water to run to waste on her premises, was not breached by the freezing of the pipes once or twice, or by allowing the water to run occasionally to pre-

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vent them from freezing, neither of which caused any inconvenience to defendant or interfered with his use of the water.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 184, 186–188; Dec. Dig. ☞158.]

2. **WATERS AND WATER COURSES ☞158½—ACTION FOR INJUNCTION—SUFFICIENCY OF EVIDENCE.**

In an action to enjoin defendant from shutting off water or interfering with water pipes to plaintiff's premises, evidence *held* to show that defendant had shut off and interfered with plaintiff's water supply.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 189; Dec. Dig. ☞158½.]

3. **WATERS AND WATER COURSES ☞158½—CONTRACTS—INTERFERENCE—INJUNCTION.**

In such case, where plaintiff had not breached the conditions under which the pipe to her premises had been laid so as to entitle defendant to forfeit the contract, he would be enjoined from shutting off or interfering with plaintiff's water supply.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 189; Dec. Dig. ☞158½.]

Appeal from Trial Term, Sullivan County.

Action for injunction by Emily Brohan Eberts against George W. Peters. Judgment for defendant, and plaintiff appeals. Reversed on law and facts, and judgment directed for plaintiff.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Robert B. McGinn, of Jeffersonville (George H. Smith, of Monticello, of counsel), for appellant.

Ellsworth Baker, of Hurleyville, for respondent.

HOWARD, J. On March 13, 1909, the plaintiff and John W. Peters, the predecessor in title of the defendant herein, entered into a written contract of which the following is a copy:

"This agreement made this thirteenth day of March, 1909, by and between John W. Peters of the town of Callicoon, Sullivan county and state of New York, party of the first part, and Anna Emilie Brohan, of the same place, of the second part:

"Whereas, the party of the first part owns a spring on the premises now owned and occupied by him in said town, and he has led the water from said spring in a lead pipe to his barn near the highway leading from Callicoon to North Branch for the purpose of watering stock, etc., and the party of the second part has purchased the premises opposite the residence of the party of the first part, formerly known as the Henry Wahl premises, and is desirous of taking water from the said lead pipe and leading the same to her residence to be used for domestic purposes:

"Now therefore, this agreement witnesseth: That in consideration of the sum of sixty dollars, the receipt whereof is hereby acknowledged, the party of the first part has granted, and does hereby grant unto the party of the second part, for a term of thirty years, and under the restrictions hereinafter set forth, the right to tap the said lead pipe at or near the watering trough, now located on the premises of the first party near the said highway, and to convey said water from said pipe, in a three-quarter inch lead or iron pipe, to the residence of the second party aforesaid.

"The party of the second part is to put in at the point of tapping said pipe, a proper and sufficient shut-off, and is to keep and maintain on the end of the said pipe, in her said residence a proper and sufficient faucet for the

purpose of shutting off the water. The party of the second part is to have the right to lay and maintain the said pipe from the point of making such tap to her said residence, with the right of ingress and egress over and upon the premises of the first party for such purpose, and she agrees to lay the said pipe of sufficient depth to keep the water from freezing, and not to permit the water to run to waste, and not to use the said water except for domestic purposes, and the second party agrees that if she violates any of the restrictions above mentioned, the party of the first may shut off the water at the point of said tap.

"The party of the first reserves however so much of said water as may be necessary for the purposes of watering stock and cooling milk on his said farm but agrees not to let the said water run to waste at his said watering trough so as to deprive the party of the second part of the same.

"The party of the first part agrees to keep in repair and maintain the pipe from said spring to said watering trough.

"The parties hereto mutually agree to jointly construct and maintain a reservoir at said spring with a spring house over the same, and pay equal shares of the cost thereof.

"This agreement to bind the heirs, legal representatives and assigns of the respective parties.

"In witness whereof the respective parties hereto set their hands and seals the day and year first above written.

　　　　　　　　　　　　"John W. Peters.　[Seal.]
　　　　　　　　　　　　"Anna Emilie Brohan.　[Seal.]"

Soon after the execution of the contract the plaintiff tapped the main pipe, led the water into her house by a three-quarter inch pipe, and installed hot and cold water, sinks, tubs, toilets, and a bathroom in her residence. The pipe was buried from 2½ to 3 feet deep, except at a brook under which it ran and at which point it came nearer to the surface. The water froze in the pipe near the brook once in the winter of 1909 and once in the winter of 1910, but was, after a little time, thawed out. Excepting this incident, the water continued to run all right until about the 17th of February, 1912, at which time, so the complaint alleges, the defendant shut the water off and deprived the plaintiff of the use of the water. During very cold weather the plaintiff occasionally let the water run to keep it from freezing, and in the answer it is alleged that this act of the plaintiff, together with her failure to bury the pipe deep enough to keep it from freezing constitutes a breach of the contract on the part of the plaintiff. The defendant, however, denies that he has shut off the water. The plaintiff demands injunctive relief against the defendant, asking that he be restrained from shutting off or interfering with the water which would otherwise flow to the plaintiff's house. She also asks for damages.

On the evidence presented the justice before whom the action was tried without a jury has rendered judgment for the defendant dismissing the complaint. The learned trial justice has found as conclusions of law that the plaintiff did not substantially perform the contract on her part, and that this nonperformance has worked a forfeiture of her rights under the contract, also that the defendant did not violate the contract, and that the plaintiff did not prove a cause of action against the defendant.

[1] Under whatever name this contract may go it requires, as all contracts do, a fair and reasonable interpretation. The parties thereto were not required to observe the strict letter of the agreement, and

cannot be held for a technical breach thereof. They were required to comply only substantially with the terms of the contract to the end that the intent of the parties might be carried out. It is the spirit, not the letter, of the agreement, which the courts must enforce.

With these simple rules before us let us see what was intended to be accomplished by the agreement. The plaintiff desired water for domestic purposes in her residence; she desired the right to go upon the premises of the grantor and tap the pipe then in existence and lay and maintain a branch pipe to her own premises. These privileges were ceded to her by the grantor. The grantor, on his part, wished to reserve for his own use a sufficient quantity of water to cool milk on his farm and to water his stock. He also wished to guard against the plaintiff's wasting the water. Therefore he caused the plaintiff to agree to lay the pipes deep enough in the ground so that they would not freeze, and as a result of the freezing burst and allow the water to waste. He also caused her to agree not to permit the water to run to waste on her premises. These restrictions upon the plaintiff's right to tap the water system on the grantor's land were all inserted in the contract for the purpose of guarding against any depletion in the supply of water to the premises of the grantor. This being the object of these "restrictions," unless that object has been thwarted by the plaintiff, she has not violated the contract. The record is absolutely devoid of any evidence which proves, or tends to prove, that the defendant's use of the water has, in any manner, been interfered with, or that he has in any way been damaged by the acts of the plaintiff. Winter and summer there has always been an abundance of water in this spring. The fact that the plaintiff's water pipes have frozen once or twice, although a technical breach of the agreement, is not a substantial breach, and is therefore no breach at all. This freezing in no manner troubled the defendant. He was not concerned with defects in the plaintiffs' water system so long as those defects did not trench upon his rights. And it cannot be said, because the plaintiff allowed the water to run occasionally in extremely cold weather to prevent the pipes from freezing, that she wasted the water and thus violated the spirit of the contract. This caused no inconvenience to the defendant, and in no manner interfered with his rights under the contract. It was not this use of the water which the grantor understood to prohibit when he caused it to be inserted in the contract the provision that the plaintiff should "not permit the water to run to waste," but it was that careless waste which would work detriment to him. In Rose v. Hawley, 141 N. Y. 366, 36 N. E. 335, where there had been a technical, but not a substantial, breach, the court said:

"It is quite certain that the plaintiff cannot recover without showing a breach of the condition in some substantial and material respect."

And further on in the opinion the court said:

"It is not enough to show in this way that the letter of the condition is violated, but it must appear that its true spirit and purpose have been willfully disregarded by the grantee."

For these technical violations of the letter of the contract the agreement should not have been declared forfeited. Forfeiture is not fa-

vored in the law. Town of Mount Morris v. King, 77 Hun, 18, 28 N. Y. Supp. 281.

[2] We now come to consider whether the trial justice was right in denying injunctive relief to the plaintiff. There can be no doubt that some agency is responsible for the interference with the plaintiff's water supply. That this interference is not occasioned by any structural or temporary defect in the system is attested by the fact that, in each instance after the stopcock was turned properly at the junction of the plaintiff's branch pipe with the defendant's main pipe, the water would immediately run freely. It is perfectly apparent that interference with this stopcock caused the difficulty. The defendant had easy access to this stopcock; it was located on his premises; he could have manipulated it at any time without being detected.

Unfortunately the plaintiff could not, apparently, either speak or understand the English language well; therefore her testimony is unsatisfactory. But enough appears from the circumstances and from what she says to establish the fact that this water was shut off by the defendant or by his consent. On one occasion when the plaintiff went to the spring to turn on the water the defendant followed her, and when she was trying to turn it he told her to leave it alone. This indicated clearly his purpose to interfere with her use of the water. And there was previously a handle on the stopcock, but this handle had been cut off. And in each instance when the plaintiff would send for a plumber and cause the stockcock to be adjusted properly so that the water would run, the plumber would scarcely reach his home before the water would stop again. These and many other circumstances point in the direction of the defendant. These circumstances, together with the fact that the defendant did not take the stand and attempt in any manner to explain them away, or offer any witness for that purpose, make out a case, we think, against the defendant as the author of the plaintiff's troubles.

[3] The plaintiff paid a valuable consideration for this water right, and has expended a substantial and considerable sum of money in installing her water system. To deprive her absolutely of all her rights under the agreement, either by declaring the contract forfeited or by refusing to compel the defendant to desist from his interference with her rights, would not be doing equity.

The judgment should be reversed, and a judgment directed for the plaintiff, granting to her the injunctive relief prayed for in her complaint.

Judgment reversed on law and facts, with costs, and judgment directed for the plaintiff granting her the injunctive relief prayed for in her complaint, with costs. This court disapproves of the fifth, sixth, seventh, tenth, twelfth, and thirteenth findings of fact, and of all the conclusions of law, and finds as facts established by the evidence that the defendant interfered with the plaintiff's use of the water and wholly prevented her from using the same. This court finds as conclusions of law that the plaintiff has in no manner violated the conditions of the contract, and that the defendant has in a substantial particular violated it. All concur.