ULRICH, *Plaintiff in Error*, v. CITY OF ST. LOUIS *et al.*

In Banc, November 14, 1892.

1. **Municipal Corporation:** NEGLIGENCE: OFFICERS. A municipal corporation is not answerable in damages for the negligent acts of its officers in the execution of such powers as are conferred on the corporation or its officers for the public good.

2. ———: ———: ———. A prisoner committed to the workhouse of St. Louis City in satisfaction of a fine imposed for the violation of its ordinance, and who while at work is kicked by a vicious mule which

the workhouse superintendent directed him to harness, cannot recover of the city for the injuries so received, even though the superintendent knew the mule was a vicious one.

· *Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*C. P. & J. D. Johnson* and *Jos. S. Laurie* for plaintiff in error. ʻ

· (1) The city owed plaintiff while confined in the workhouse reasonable care and protection, and is liable for the injuries received because of the negligence of its servants. (2) A city is liable for negligence in the exercise of powers conferred for its private corporate advantage. *Stewart v. New Orleans,* 100 Am. Dec.ʼ 218; *Bailey v. New York,* 3 Hill, 531; *Wright v. Augusta,* 78 Ga. 241; *Murtaugh v. St. Louis,* 44 Mo. 479; *Memphis v. Kimbrough,* 12 Heisk. 133. The plaintiff was not a criminal while confined in the workhouse; the action against him was a civil one, and the judgment rendered one for debt. *Ex parte Hollwedell,* 74 Mo. 395; *St. Louis v. Vert,* 84 Mo. 204; *City, etc., v. Brown,* 44 Mo. App. 148. The workhouse itself is a source of pecuniary revenue to the city, and the city directs and controls their labor and receives its profits, and is responsible for the acts of its servants, under the facts averred in the petition in this case. *Carrington v. St. Louis,* 89 Mo. 209; *Lewis v. City of Raleigh,* 77 N. C. 229; *Moulton v. Scarborough,* 71 Me. 267; *Neff v. Wellesby,* 148 Mass. 487; *City of Toledo v. Cone,* 44 Ohio St. 149.

*W. C. Marshall* for defendants in error.

(1) The city ordinances, quoted in the brief for plaintiff in error, cannot be considered by this court, nor referred to in any manner in the determination

of this case. Those ordinance provisions were not pleaded, and consequently it is not proper to refer to them now. *City of St. Louis v. Stoddard*, 15 Mo. App. 173; *City of Kansas v. Johnson*, 78 Mo. 65; *Apitz v. Railroad*, 17 Mo. App. 419; *Keane v. Klausman*, 21 Mo. App. 485; *Nutter v. Railroad*, 22 Mo. App. 328; *Heman v. Payne*, 28 Mo. App. 72. (2) It is not necessary to look outside of our own state for authorities on the proposition involved in this case. Ever since the decision in the case of *Murtaugh v. St. Louis*, 44 Mo. 479, the rule of law has been settled in this state, that a municipal corporation is not liable in damages for the wrongful or negligent acts of its police or other officers in the execution of powers conferred upon the corporation or officers for public good, and not for private corporate advantages, unless made liable by statute law, expressly or by implication. *Armstrong v. Brunswick*, 79 Mo. 319; *Kiley v. City of Kansas*, 87 Mo. 103; *Carrington v. St. Louis*, 89 Mo. 215; Dillon on Municipal Corporations, sec. 965a. (3) The workhouse of the city is not an institution established and conducted for the private pecuniary gain of the city. See Dillon on Municipal Corporations, sec. 975, note 1; *Caldwell v. Boone*, 51 Iowa, 687; *Ogg v. Lansing*, 35 Iowa, 495; *McKay v. Buffalo*, 74 N. Y. 619. (4) It is nowhere alleged in the petition that the vicious and dangerous disposition of the mule consisted of its propensity to kick, and the allegation as to the knowledge of the city as to its vicious character is insufficient. *Bell v. Leslie*, 24 Mo. App. 670; *Spring Co. v. Edgar*, 99 U. S. 654.

THOMAS, J.—SHERWOOD, C. J., made a statement and delivered the opinion of division 1 of this court in this case as follows:

"Action for damages for injuries received by plaintiff while he was imprisoned and employed in the

workhouse, in satisfaction of a fine imposed for the infraction of a city ordinance. The petition is as follows:

"'Plaintiff states that the city of St. Louis, defendant herein, is and was at the dates hereinafter mentioned a municipal corporation; that on the ―――― day of ―――― plaintiff was arraigned before the police court of the city for breach of the city ordinance, and fined in the sum of $ ――――; that in pursuance of said judgment and fine, and in order to collect and realize the amount thereof by his services and labor in behalf of the city, said city, by its agents, thereupon at once delivered and committed plaintiff to its workhouse, an establishment which it was authorized by law to maintain; that defendants, Joseph Geller and John Bungertner, were superintendents of said workhouse, and were the agents or employes of said city; that by the terms of his sentence plaintiff was required to serve the city forty-five days in said workhouse, and to do and perform such service and labor as was required of him; that whilst so confined and employed he was ordered and directed by defendants to hitch to a vehicle a certain pair of mules, and was required to obey, and whilst attempting so to do he was, without fault of his, violently kicked in the breast by one of said mules, whereby three of his ribs were broken, and he was occasioned great pain and anguish, and is disabled for life. Plaintiff states that said mule was of a vicious and dangerous disposition, wholly unfit for use, and unmanageable, so that it was dangerous to approach or attempt to handle the same; that said animal was owned by the city of St. Louis, and had for a long time been employed by it, and that said city, and its agents and superintendents likewise, well knew the dangerous character of said animal, as aforesaid, and that it was consequently unsafe to attempt to use it for

any purpose.    Plaintiff states that by reason of the premises, he has sustained damages in the sum of $20,000 for which he prays judgment and costs.'

"The defendants demurred generally, and were successful in so doing, and, the plaintiff failing to plead further, final judgment was given on the demurrer, and plaintiff bri igs error."

## OPINION.

"By paragraph 10 of section 26, article 3, of the charter of the city of St. Louis, the mayor and municipal assembly are given power to impose, collect and enforce fines, forfeitures and penalties for the breach of any city ordinance.  Any offender who shall neglect or refuse to pay any fine, penalty and cost that may have been imposed upon him or her shall be committed to the workhouse, or, in case of women, in such place as for them may be provided, until such fine, penalty and costs be fully paid; provided that no such imprisonment shall exceed six months for any one offense. Every person so committed to the workhouse, or such other place, aforesaid, shall be required to work for the city at such labor as his or her health and strength will permit, within or without said workhouse, or other place, not exceeding ten hours each working day; and for such work the person so employed shall be allowed, exclusive of his or her board, fifty cents a day for each day's work, on account of said fine and costs.'

"Under this charter provision of the defendant city, there can be no doubt of its power to enforce its ordinances by imprisonment, and this is true, notwithstanding that such ordinances are not strictly penal.

"Whenever the law confers a right or power, it gives the enforcement of that right or power as an *incident;* everything necessary to making that power

or right effectual or requisite to obtain the end is implied. *Parker v. Way*, 15 N. H. 45; 1 Kent's Commentaries, 464; *Moulton v. Reid*, 54 Ala. 320; 9 Bacon's Abridgments, 219–20; *People v. Eddy*, 57 Barb. 593.

"The origin and reason of such power are given in a standard work on municipal corporations, the learned author expressing himself on this subject thus: 'Since an ordinance or by-law without a penalty would be nugatory, municipal corporations have an implied power to provide for their enforcement by reasonable and proper fines against those who break them. So the right to make by-laws gives to the corporation, without any express grant of power, the incidental right to enforce them by reasonable pecuniary penalties. What is reasonable depends upon the nature of the offense and the circumstances.' 'In this country it is not unusual to provide, in the organic act of municipal corporations, that, if fines for violations of by-laws or ordinances are not paid, *the offender may be committed to prison* for a limited period. And in respect to some offenses, public in their character, the power to imprison in the first instance is often conferred.' 1 Dillon on Municipal Corporations [4 Ed.] secs. 338, 353.

"The rule of law is well settled in this state that a municipal corporation is not answerable in damages for the negligent acts of its officers in the execution of such powers as are conferred on the corporation or its officers for the public good. *Murtaugh v. City*, 44 Mo. 479; *Hannon v. St. Louis Co.*, 62 Mo. 313; *Armstrong v. City*, 79 Mo. 319; *Kiley v. City*, 87 Mo. 103; *Carrington v. City*, 89 Mo. 208; *Keating v. City*, 84 Mo. 415; 2 Dillon on Municipal Corporations [4 Ed.] sec. 965a.

"The same author says: '*The police regulations of a city* are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the

public.  A city is not liable, therefore, for the acts of its officers in attempting to  enforce such regulations. (*Caldwell v. Boone*, 51 Iowa, 687; *Odell v. Schroeder*, 58 Ill. 353; *Ogg v. Lansing*, 35 Iowa, 495; *Prather v. Lexington*, 13 B. Mon. 559; *Elliott v. Philadelphia*, 75 Pa. St. 347; *McKay v. Buffalo* (carelessly wounding plaintiff), 74 N. Y. 619), nor will it be made liable by ratifying torts of police officers.'  2 Dillon on Municipal Corporations [4 Ed.] sec. 975, p. 1197, note 1.

"The city defendant in conducting its workhouse cannot be regarded as doing so as a means of profit or private municipal gain or revenue.  It is obvious beyond question that the workhouse in this case was erected and conducted for the public good, and imprisonment therein was only the legitimate exercise of suitable police regulations such as the city undoubtedly had the power to enact."

The principles announced and the conclusion reached in this opinion are sound and correct, and we approve both; but we will add a few additional observations because of some doubts that have been expressed in relation thereto.

Plaintiff's attorneys have cited *Moulton v. Scarborough*, 71 Me. 267; *Neff v. Wellesley*, 148 Mass. 487; *Toledo v. Cone*, 41 Ohio St. 149, and *Lewis v. City of Raleigh*, 77 N. C. 229, and insist that they are in conflict with the foregoing opinion, and that they support the doctrine that a city or town is liable in damages for the negligence of its servants and officers under circumstances similar in principle to the one in hand.

In the *Moulton* case the question arose on demurrer to plaintiff's petition, which alleged that defendant, the town of Scarborough, owned a ram of vicious disposition, and accustomed to attack and butt persons, all of which was known to defendant, and which defendant carelessly and negligently allowed to run at large, to

the danger of the citizens of the state, and that the ram went upon the premises where plaintiff was and where she had a right to be, and injured her.   We may infer from the opinion of the supreme court of Maine in the case, though it nowhere so appears in the statement, that defendant owned and maintained a farm for the support of the poor, on which it raised cattle, horses, swine and sheep.   The court, after stating that it is not, by statute, the duty of a town to own and carry on a farm on which to keep and support the poor, but that it may lawfully do so if it see fit, says:   "If it does so it is not done in the performance of a public duty enjoined upon it by law, but as a voluntary corporate act. * * * For all matters connected with the management of the farm by its agents and servants; for the proper keeping and restraining of all domestic animals kept. upon it by its authority for purposes of profit, it. undoubtedly rests upon the same liability as persons."

In the *Neff case*, the town of Wellesley owned a. farm and maintained an almshouse thereon, and it was held liable for an injury caused to a third person by the negligence of its employes on such farm on the ground that it carried on a business for its private benefit.. The court, after laying down the general rule of non-- liability of a town for the negligence of its agents and servants in the performance of a public duty imposed by law, says:   "Whether this rule should be held to apply to the use of a farm for *no other purpose* than the support of paupers who are a charge upon the town, it is unnecessary to decide.   For the jury have found that paupers whose support was chargeable to *another* town, and to the *commonwealth*, were *boarded for pay* upon the defendant's farm, and that persons employed to work upon the highways were also boarded there, and that horses were kept there principally for use in repairing the highways."

VOL. 112—10

In the *Cone case* an employe, while employed in improving a vault in a cemetery owned by the city of Toledo, was injured by the negligence of the superintendent of such cemetery, whose orders and directions the employe was required to obey. The supreme court of Ohio held the city liable upon the ground that the cemetery and vault were a source of benefit and advantage to the corporation, and involved the same responsibility for their unsafe and improper management which pecuniary and proprietary interests entail upon natural persons.

In the North Carolina case it was held that it was the duty of a city, under the constitution and laws of that state to provide prisons, to secure the health and comfort of those confined therein, and that a city is liable for injuries caused by noxious air in an unventilated guardhouse in which the injured party had been imprisoned by a policeman for the violation of a city ordinance. The supreme court of that state put its ruling upon the distinct ground that the act complained of was *the city's act*—the guardhouse, the violated ordinance and the officer all being the city's. The question is summarily disposed of without argument or citation of authority. Whether that ruling can be sustained upon its peculiar facts we will not at this time undertake to say, but if it is intended to announce the doctrine that a municipality is liable, in damages, for the negligence of its officers in the performance of governmental functions delegated to it by the state, unless liability is created by statute, we think it is not only not in line with the reasoning and grounds of decision in the other cases above cited, but is also in conflict with the general current of authority, whether of adjudged cases or of text-writers, and we cannot give it our sanction.

In *Curran v. Boston*, 151 Mass. 505, plaintiff alleged that he was an inmate of the workhouse or

house of industry, belonging to the city of Boston, having been convicted of the misdemeanor of not supporting his family, and having been legally sentenced to confinement there; that he was injured while engaged in unloading coal; that he was in the exercise of due care, and that the officers and servants employed in this institution were negligent, and he contended, as the plaintiff here contends, that the city was liable because it had embarked in an enterprise, partly commercial, from which it received a partial remuneration for its expenditures out of a special class in the community, so that the entire expense of conducting the workhouse is not met by taxation. The lower court ruled that plaintiff could not maintain his action, and on appeal to the supreme judicial court of Massachusetts this ruling was affirmed, the court saying: "By the statute authorizing the erection and maintenance of workhouses by a city, a mode of performing a strictly public duty is provided for, which cannot be of any peculiar advantage to the cities or towns instituting them. No such case is presented as exists where a city * * * acts as an agency to carry on an enterprise, to some extent commercial in its character, for the purpose of furnishing conveniences and benefits to such as choose to pay for them."

And again as late as April, 1891, this same court in *Howard v. Worcester*, 2 Lawyers' Rep. Ann. 160, decided that "negligence in blasting for the construction of a schoolhouse, the work being purely for the benefit of the public, cannot create any liability against a city unless by force of some statute," the court distinguishing between that case and cases where cities had been held liable for "injuries caused by or in the course of the construction of roads and bridges, by blasting rocks, setting back water," etc.

In *Brown, Adm'r, v. Guyandotte*, 11 Lawyers' Rep. Ann. 121, the supreme court of West Virginia held that "a town is not liable for damages for the death of a person, caused by the burning of its jail, while such person was confined therein by town authority for a violation of its ordinances, though such fire was attributable to the wrongful act or negligence of the officers. or agents of the town," citing with approval the case of *Murtaugh v. St. Louis*, 44 Mo. 479, where our court held that a city is not liable to a non-paying patient at its hospital for injuries resulting from the negligence or misfeasance of the officers and servants. of the institution. To the same effect in principle are *Gillespie v. Lincoln*, 52 N. W. Rep. (Neb.) 811, and *Dodge v. Granger*, 35 Cent. Law Jour. (R. I.) 49.

"To the extent    *    *    *    local or special organizations possess and exercise governmental powers, they are, as it were, departments of state; as such, in the absence of any statute to the contrary, they have the privilege and immunity of the state; they partake of the state's prerogative of sovereignty, in that they are exempt from private prosecution for the consequences. of their exercising or neglecting to exercise the governmental powers they possess. To the extent that they exercise such powers, their duties are regarded as due to the public, not to individuals; their officers are not agents of the corporation, but of 'the greater public,' the state. No relation of agency existing between the corporation and its officers, with respect to the discharge of these public governmental duties, the corporation is not responsible for the acts or omissions of its officers therein. This is nothing more than an application and proper extension of the rule that the state is not liable for the misfeasance of its officers." 1 Shearman & Redfield on Negligence, sec. 253.

In this case the city of St. Louis was simply in the

exercise of its public, governmental functions delegated to it by the state, from the time the first arrest was made until the injury occurred, in enforcing its ordinances enacted to preserve the peace, safety and good order of society, and it is no more liable for the negligence of its officers in this respect, than the state would be liable for the negligence of its highest officers in the performance of the same class of duties.

The judgment is affirmed. SHERWOOD, C. J., BRACE, GANTT and MACFARLANE, JJ., for the reasons expressed in the opinion of SHERWOOD, C. J., concur. BLACK, J., dissents, and BARCLAY, J., expresses no opinion.