JEWELL BROWN, Appellant, v. THE CITY OF CRAIG, a Municipal Corporation, Respondent.—No. 38263.—168 S. W. (2d) 1080.

Division One, March 2, 1943.

*Clayton W. Allen* and *Marion R. Garstang* for appellant.

838

*L. A. Vonderschmidt* and *Livengood & Weightman* for respondent.

HYDE, J.—This is an action for $10,000.00 damages for wrongful death of plaintiff's husband from the burning of the city jail in which he was confined, "to await trial for the misdemeanor of intoxication." Defendant's general demurrer was sustained and judgment of dismissal entered from which plaintiff has appealed.

Plaintiff's petition stated that in using this jail the city "maintained a dangerous nuisance and death trap" (which conclusion is often repeated); but further stated the particulars upon which this claim was based, as follows:

"That said jail . . . was located in a building to itself and was located in a part of said town that was and is not closely inhabited and was located a long distance away from any other buildings or dwellings where other people live and was located at a place where people are not likely to be about and that said jail is isolated to itself; that no means of communication of any kind is or was provided in said city jail . . . whereby parties who might be lawfully confined therein awaiting trial could communicate with city officials or with the proper officers of the fire department or with any person whatsoever in the event fire should break out in said jail; . . . that said jail . . . was of sound proof construction and was so built that a person lawfully confined therein awaiting trial could not call to any officer of said city nor to any fire station or fire officer nor even to any passer-by or neighbor and could

not warn any of said officers or persons of a dangerous condition arising in said jail due to fire breaking out therein; . . . that said city jail . . . was not provided with fire extinguishers of any kind nor with fire protection of any kind; that said city jail . . . was of air-tight construction and that no openings were provided therein for ventilation; that no ventilating system of any kind was installed in said city jail; . . . that said city jail . . . was of small dimensions and that it was dangerous to place persons therein because of the lack of proper ventilation and because of the danger of fire and of suffocation from smoke; that said city jail . . . was so carelessly and negligently constructed that a person lawfully confined in the cell therein could not reach the outer door or any outer opening whatever, to secure ventilation or to give an alarm of fire or other danger that might arise; that said outer door and all windows in said jail . . . were kept locked and closed tight ▆▆▆ and could not be opened for proper ventilation; that no adequate light was provided in said city jail; . . . that said city jail . . . was carelessly and negligently left unkept and un-cleaned and that great amounts of trash, rubbish, paper, rags, dirt, filth, grease, oil, clothing and bed clothing, old papers and magazines, matches, cigarette stubs and combustible material had accumulated therein; . . . that the bed clothing in said city jail . . . were carelessly and negligently permitted to become and remain dirty, filthy and unkept and that matches, cigarette stubs, smoking tobacco, grease and oil accumulated therein and had so accumulated for a long time to the knowledge of said City of Craig and the officers and mayor thereof; . . . and that said bed clothing was of a dangerous and combustible type and that said bed clothing was permitted to remain in said jail . . . in the daytime and that prisoners and persons confined therein awaiting trial were permitted to take matches and smoking tobacco and materials into said jail; that no warning was given of the dangerous condition of said jail . . . nor any warning given against lighting matches therein nor against smoking therein and that the light in said jail . . . was not sufficient to permit prisoners or persons therein awaiting trial to see and be aware of the dangerous condition thereof due to the careless and negligent construction and maintenance thereof; . . . that no inspection of said jail was provided by said City of Craig; that said City of Craig negligently and carelessly failed to provide a watchman or jailor or any other officer or attendant for said jail."

▆▆▆ Plaintiff recognizes the rule "that a city is not liable for the negligent act of its agent or officer in connection with a governmental function"; and frankly admits that, if this petition were based on such negligence, "it would have to fail." Plaintiff's contention, however, is that the petition pleads an injury resulting from the creation and maintenance of a nuisance for which a city is liable even though it be in connection with the exercise of governmental functions.

We reviewed the authorities on this subject in Pearson v. Kansas City, 331 Mo. 885, 55 S. W. (2d) 485, where similar contentions were made. We pointed out the following distinctions between nuisance and negligence: That to constitute a nuisance "there must be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use"; and that creating or maintaining a nuisance is the violation of "the absolute duty of refraining from the participating acts, not merely the relative duty of exercising reasonable care, foresight and prudence in their performance." We further said: "The wrongfulness must have been in the acts themselves, rather than in the failure to use the requisite degree of care in doing them, and therein lies the distinction, under the facts of this case, between 'nuisance' and 'negligence.' The one is a violation of an absolute duty; the other a failure to use the degree of care required in the particular circumstances—a violation of a relative duty." [See, also, 6 McQuillin (2 Ed.), Municipal Corporations, pp. 1105-1112, sec. 2812.]

Considering the allegations of the petition in this case, it is apparent that since the city was maintaining the jail in the exercise of its governmental function the matter of its location was for determination by its proper governmental body. Likewise, providing no means for prisoners to communicate with persons outside the jail and keeping doors and windows locked were proper matters of jail regulation. The allegations concerning ventilation do not show that the ventilation was insufficient for ordinary or usual use, or that there was any danger of suffocation except from smoke in case of fire. Other allegations such as failure to provide fire extinguishers, failure to provide a jailor or attendant, failure to provide adequate light, failure to clean the building, and failure to prevent prisoners from smoking are all allegations of failure to exercise reasonable care, foresight, and prudence, and not of danger inherent in the jail itself. We have held that "inherently dangerous means that danger inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard to it to prevent injury; instead of danger arising from mere casual or collateral negligence of others with respect to it under particular circumstances." [Hull v. Gillioz, 344 Mo. 1227, 130 S. W. (2d) 623.] Clearly, the allegations of this petition show nothing inherently dangerous in the construction or condition of the jail; but instead, show a condition from which danger would result only from casual or collateral negligence of others in its use. In other words, danger would arise only from failure, on the part of the city police officers or the prisoners, to exercise reasonable care, foresight, and prudence. We, therefore, hold that the real basis of plaintiff's claim, as disclosed by the actual factual allegations of this petition, is negligence and not nuisance.

The reported cases with similar facts all hold against liability in a case of this kind. [41 Am. Jur. 899, sec. 19; 43 C. J. 1168, sec. 1933; McQuillin (2d Ed.), Municipal Corporations, 1113, sec. 2813; Annotation 46 A. L. R., 103; see also 61 A. L. R. 569.] Perhaps most similar on the facts are Nichols v. Town of Fountain, 165 N. C. 166, 80 S. E. 1059, 52 L. R. A. (N. S.), 942, and Carty v. Village of Winooski, 78 Vt. 104, 62 Atl. 45, 2 L. R. A. (N. S.), 95. Missouri cases have applied the same principle in Ulrich v. St. Louis, 112 Mo. 138, 20 S. W. 466; Pearson v. Kansas City, 331 Mo. 885, 55 S. W. (2d) 485; see also 38 Am. Jur. 260, secs. 571-573; 43 C. J. 921, sec. 1701 et seq.] In the Ulrich case, this court en Banc cited as authority Brown v. Town of Guyandotte, 34 W. Va. 299, 11 L. R. A. 121, wherein "the Supreme Court of West Virginia held that 'a town is not liable for damages for the death of a person, caused by the burning of its jail, while such person was confined therein by town authority for a violation of its ordinances, though such fire was attributable to the wrongful act or negligence of the officers or agents of the town.'" Our ruling in the Ulrich case (where a prisoner was kicked by a vicious mule) was: "The City of St. Louis was simply in the exercise of its public, governmental functions delegated to it by the state, from the time the first arrest was made until the injury occurred, in enforcing its ordinances enacted to preserve the peace, safety and good order of society, and it is no more liable for the negligence of its officers in this respect, than the state would be liable for the negligence of its highest officers in the performance of the same class of duties." Our conclusion is that the situation here is the same.

This whole doctrine of governmental immunity has been increasingly criticized. However, such nonliability is based not merely on the ancient view that the king can do no wrong, as frequently suggested; but also upon the principle that public officers have no authority to bind the sovereign (the whole people) except such as is given them by specific constitutional and statutory provisions. The general rules of respondeat superior cannot be applied to them without opening up unlimited possibilities for wasteful and dishonest dissipation of public funds. While the complexity of modern government may require a relaxation of present rules of absolute nonliability, undoubtedly this is a matter for the Legislature (which must authorize the collection and disbursement of public funds) to provide in the interest of more complete justice to the individual but under strict regulations and with very definite limitations to protect the public interest.

The judgment is affirmed. All concur.