**Jack GILLEN, Appellant (Plaintiff),**

v.

**CITY OF ST. LOUIS, Respondent (Defendant).**

**No. 48274.**

Supreme Court of Missouri,

Division No. 1.

April 10, 1961.

Flynn, Challis & Sumner, Thomas W. Challis, Jr., St. Louis, for appellant.

Thomas J. Neenan, City Counselor, Alvin J. McFarland, Associate City Counselor, St. Louis, for respondent, City of St. Louis.

DALTON, Judge.

Action for $25,000 damages for personal injuries alleged to have been sustained by reason of defendant's negligence. The court sustained defendant's motion to dismiss on the ground that the petition failed to state a claim upon which relief could be granted, and dismissed the petition with prejudice. Plaintiff has appealed from the judgment entered against him.

The petition alleged that: " * * * on or about the 23rd day of October, 1959, at a point known as 1206 Olive Street in St. Louis, Missouri, and more particularly described as a point immediately east of an alley which intersects at right angles to Olive Street on the south side thereof and runs directly south therefrom, defendant City constructed, erected and maintained and had the exclusive management and control of a traffic sign attached to a light standard; that said traffic sign was caused, allowed and permitted to fall from said light standard and strike plaintiff who was lawfully upon the public sidewalk there, with great force and violence; that as a direct result thereof plaintiff was seriously and permanently injured as hereinafter specified, and that said occurrence and plaintiff's resultant injuries were directly and proximately caused by negligence and carelessness on the part of defendant."

Defendant's motion to dismiss the petition was based on the ground that: " * * * in paragraph 3 of plaintiff's petition it is alleged that plaintiff's cause of action, if any, arose out of a traffic sign, attached to a light standard, falling and striking plaintiff, the operation, maintenance and control of which is a governmental function performed by the City of St. Louis for the general benefit, health and welfare of the citizens of St. Louis and, under such circumstances, plaintiff is not entitled to any legal redress against defendant while acting in its governmental capacity."

In entering the judgment sustaining the motion to dismiss and dismissing the petition with prejudice, the court indicated that its decision was based upon Blackburn v. City of St. Louis, 343 Mo. 301, 121 S.W. 2d 727 and Hiltner v. Kansas City, Mo. Sup., 293 S.W.2d 422. In each of these cases, the city had constructed a device in the street for the purpose of regulating traffic and it was held that the regulation of traffic was a governmental function and that the city was not liable for the negligent maintenance of the device.

Introductory to our discussion of the issues presented, we quote from McQuillin on Municipal Corporations, 3rd Ed., Secs. 53.23, 53.24 and 53.42, as follows: "A municipal government has a double function, first, the private, proprietary function, and, second, the governmental function as the arm or agent of the state. The intermingling of these two functions has resulted in difficulty in determining the boundary line in separating the two. There is substantial unanimity, however, upon the proposition that the incorporated city or town when exercising its private or corporate powers, is liable to respond in dam-

ages for the negligence of its officers, agents and employees. * * * On the other hand, negligence in performance is not imputable to a municipal corporation entrusted with public or governmental duties. However, there is a wide divergence in the decisions as to what functions are governmental or public and what are private or corporate, and functions held to be governmental in some jurisdictions are held to be corporate in others. * * * (Section 53.23.)

"The doctrine exempting a municipal corporation from private action for torts resulting from the performance of its governmental functions, steadily adhered to by the most recent judicial decisions, * * * is based on the familiar reason that the undertaking is not to promote the private interests of the municipality as a corporate entity, but rather for the public benefit, and in the performance of such obligation the municipality is a mere public agent, either of the state or of the local community. * * * (Sec. 53.24.)

"A city functions in a governmental capacity in maintaining traffic signs, and in the operation of a traffic light system. * * * however, it has been said, 'There is a well-defined distinction between acts connected with the operation of the lights to serve the governmental function and the physical maintenance on the streets of the devices through which the governmental function is served. In the first instance, the police act as agents of the city in its governmental capacity, in which case the city is not responsible, but, in the second, the duty involved is the maintenance of city highways, which is action by the city in its corporate or proprietary capacity for which the city is responsible.' " (Sec. 53.-42.) One of the cases cited in support of the last point is Mengel v. City of St. Louis, 341 Mo. 994, 111 S.W.2d 5.

Appellant contends that his petition sufficiently states a claim upon which relief can be granted because "this action is one based upon the defendant's negligent breach of its duty to keep its streets and sidewalks reasonably safe and free of dangerous conditions or obstructions, a proprietary function for which the City is liable in tort." Appellant argues that "the doctrine of governmental immunity is to be restricted rather than extended and, even though it is held that traffic direction is a governmental function, it does not follow that the City is immune from liability merely because the sign, which by negligent construction, erection or maintenance made the sidewalk dangerous and unsafe, happened to be one used by the City in the performance of a governmental function * * *."

In support of the contention that the petition states a claim upon which relief can be granted, appellant cites: Mengel v. City of St. Louis, supra; Boyd v. Kansas City, 291 Mo. 622, 237 S.W. 1001; Adams v. Kansas City, Mo.App., 266 S.W.2d 771 and Metz v. Kansas City, 229 Mo.App. 402, 81 S.W.2d 462.

These cases were fully considered by this Court in Hiltner v. Kansas City, supra, 293 S.W.2d 422, 425 and the Court there said: "These cases all properly hold that a city is liable in tort for its failure to maintain its streets in a reasonably safe condition. Each case involves the situation where a traveler, either in a car or as a pedestrian, was injured by reason of the failure of the city to mark adequately an obstruction in the street or because it permitted the continued existence of a dangerous defect in the street. However, in each case the obstruction was not an instrumentality used solely for the direction of traffic, or the defect did not pertain to the use of the instrumentality in directing traffic. Therein lies the distinction between those cases and this one." Each of the mentioned cases is distinguishable upon its own peculiar facts and by the further fact that the negligence pleaded was not the negligent performance of a governmental function.

It is well settled in this state that the regulation of traffic is a governmental func-

tion. Hiltner v. Kansas City, supra, 293 S.W.2d 422, 425; Prewitt v. City of St. Joseph, 334 Mo. 1228, 70 S.W.2d 916; Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W.2d 778, 780; Carruthers v. City of St. Louis, 341 Mo. 1073, 111 S.W.2d 32; Blackburn v. City of St. Louis, supra, 121 S.W.2d 727. In Auslander v. City of St. Louis, supra [332 Mo. 145, 56 S.W.2d 780], this Court held that: "* * * the maintenance and operation by the city of automatic stop and go signals at street intersections for the purpose of regulating traffic and tending to promote safety is an exercise by the city of its governmental power," and the city cannot be held liable in damages for negligence in this respect.

In Hiltner v. Kansas City, supra, 293 S.W.2d 422, 426, a verticle post and reflector sign at the south end of a safety zone had been previously struck by some vehicle so that said sign and post were no longer clearly visible to drivers of vehicles, and an automobile was caused to pass through the safety zone and to strike and injure the plaintiff. Plaintiff charged that her injuries were due to defendant's negligent maintenance of the post and reflector sign. The Court said: "A safety zone is not in and of itself inherently dangerous. There are no facts alleged from which it could be inferred that the safety zone was not a reasonable device for the regulation of traffic. The only negligence of which the city is charged is that of negligent maintenance of the safety zone in its use as a device for the regulation of traffic, and for that negligence the city is not liable in tort. The petition does not state a cause of action against the city."

In Prewitt v. City of St. Joseph, supra, 70 S.W.2d 916, the plaintiff was injured by falling from his motorcycle when it ran against a stop sign the City had erected as a warning to westbound travelers about to enter a particular street intersection. Plaintiff alleged that defendant was negligent in "maintaining the sign on the street in an obscured condition." Recovery was denied by the court because the sign was

intended to regulate traffic, a governmental function.

Blackburn v. City of St. Louis, supra, 121 S.W.2d 727, was a pedestrian's action against the City for injuries sustained as a result of being struck by an automobile on the sidewalk. The automobile had been deflected from its course after colliding with "traffic buttons", about 4 inches high, which had been attached to the surface of the street to designate boundary lines of a safety zone for streetcar passengers. The improvement was authorized by an ordinance providing for such a zone. It was held that the maintenance of the buttons was a governmental rather than a corporate function of the City, since such "traffic buttons" solely served to regulate traffic.

Appellant argues that the case now before us is a case of first impression in this state and that "all cases granting immunity can be distinguished on the grounds that they involved either negligent *misdirection* of traffic, negligent *nondirection* of traffic or negligent construction or maintenance of traffic regulators which *were intended to be obstructions to the public way.*"

Appellant cites Dallas v. City of St. Louis, Mo.Sup., 338 S.W.2d 39, 41, in support of his contention that the modern tendency is to restrict rather than to extend the area of governmental immunity. And see 38 Am.Jur., p. 265, Sec. 573; 63 C.J.S. Municipal Corporations § 746, p. 29.

Appellant insists that "the instant case involves a *sidewalk* in a dangerous condition by reason of an obstruction overhead and the fact that the obstruction *happened* to be a *traffic* sign is merely incidental since the defect did not pertain to the direction of traffic."

Appellant has cited a number of other cases from other jurisdictions and relies particularly on Scarpaci v. City of Chicago, 329 Ill.App. 434, 69 N.E.2d 100. In that case a 25 lb. metal stop sign, mounted 6 or 7 feet above the surface between the sidewalk and the street, had for 3 or 4 months

been loosely fastened to a pole with only one screw which had worn thin. The sign fell, apparently of its own weight, and injured a child. The Court said: "When the stop sign involved herein, through the absence of proper fastening of the metal plate to the sign post or pole, became dangerous to persons using the public street or the parkway, it became an obstruction or defect in the street for the continuance of which the defendant became liable after reasonable notice, even though the sign post was an instrumentality used by the city in the performance of a governmental function." 69 N.E.2d 100, 103. And see Hillstrom v. City of St. Paul, 134 Minn. 451, 159 N.W. 1076, L.R.A.1917B, 548. It is apparent that these cases are not in accord with the decisions of this Court.

In Illinois, the installation, operation and maintenance of an electric traffic signal is a corporate function so that a municipality is liable for negligence in failing to keep such signals in a proper state of repair. Johnston v. City of East Moline, 338 Ill. App. 220, 87 N.E.2d 22. The 1960 Cum. Supp. to Vol. 18, McQuillin, Municipal Corporations, 3rd Ed., recognizes that this case is contrary to the majority rule stated in Sec. 53.42 of the text. And see 63 C.J.S. Municipal Corporations § 782, p. 91.

While appellant insists that his action is based "upon the defendant's negligent breach of its duty to keep its streets and sidewalks reasonably safe and free of dangerous conditions or obstructions", no such duty is alleged in the petition and the breach of no such duty is charged. Nor does the plaintiff allege that the sidewalk was not reasonably safe, or that it was caused or permitted to be and remain in a dangerous and unsafe condition because of the erection and maintenance of the traffic sign, nor does the petition allege that dangerous obstructions were permitted to exist above the sidewalk. On the other hand, it is apparent from the face of the petition that the negligence charged and intended to be relied upon as a basis for recovery against defendant City is general

negligence under the res ipsa loquitur doctrine in the construction, maintenance and control of a traffic sign attached to a light standard whereby the traffic sign was caused, allowed and permitted to fall and strike plaintiff, who was lawfully upon the sidewalk.

■ No facts are stated in the petition tending to show that the traffic sign in question, or the light standard to which it was attached, were inherently dangerous, nor can it be inferred from the facts stated that a traffic sign attached to a light standard was not a reasonable device or means for the regulation of traffic. We think the petition shows upon its face that the alleged negligent acts complained of in the construction, maintenance and control of the mentioned traffic sign were committed in the performance of a governmental function for which the City is not liable in tort. Hiltner v. Kansas City, supra, 293 S.W.2d 422, 425; Brown v. City of Craig, 350 Mo. 836, 168 S.W.2d 1080, 1082; Blackburn v. City of St. Louis, supra, 121 S.W.2d 727. The allegations of the petition are not sufficient to bring the cause within the authorities relied upon. And see 38 Am. Jur., p. 372, Sec. 665 and 63 C.J.S. Municipal Corporations § 934d(3), p. 399.

A number of Missouri authorities have recognized that the doctrine of governmental immunity for tort in such cases has been criticised. See Hiltner v. Kansas City, supra, 293 S.W.2d 422, 425(3). We think the criticism is best answered in Brown v. City of Craig, supra, 168 S.W.2d 1080, 1083(4, 5), as follows: "This whole doctrine of governmental immunity has been increasingly criticised. However, such nonliability is based not merely on the ancient view that the king can do no wrong, as frequently suggested; but also upon the principle that public officers have no authority to bind the sovereign (the whole people) except such as is given them by specific constitutional and statutory provisions. The general rules of respondeat superior cannot be applied to them without opening up unlimited possibilities for waste-

ful and dishonest dissipation of public funds. While the complexity of modern government may require a relaxation of present rules of absolute nonliability, undoubtedly this is a matter for the Legislature (which must authorize the collection and disbursement of public funds) to provide in the interest of more complete justice to the individual but under strict regulations and with very definite limitations to protect the public interest."

The judgment is affirmed.

All concur.