Barbara B. DAVIES, Plaintiff,

v.

CITY OF KANSAS CITY, MISSOURI, a Municipal Corporation, Defendant.

No. 82–0042–CV–W–9.

United States District Court, W.D. Missouri, W.D.

March 2, 1983.

Stephen B. Millin, Jr., Heavner, Wilkins, Jarrett & Kimball, Kansas City, Mo., Victor A. Bergman, Schnider, Shamberg & May, Chartered, Shawnee Mission, Kan., for plaintiff.

Michael W. Bradley, Asst. City Atty., Kansas City, Mo., for defendant.

## ORDER

BARTLETT, District Judge.

This case pends on the defendant's motion for summary judgment and the plaintiff's motion to amend complaint by adding parties defendant. On December 30, 1982, the Court heard oral arguments on the motions. For the reasons stated herein, the plaintiff is granted leave to amend her complaint by adding parties defendant and the motion of the defendant City of Kansas City, Missouri, for summary judgment is granted.

### Plaintiff's Motion for Leave to Amend

Plaintiff seeks to amend her complaint by adding as parties defendant, Delbert Karmeier, Director of Transportation for the City of Kansas City, Missouri; James Lee, Transportation Engineer for the City of Kansas City, Missouri; and Gordon White, an employee of the Department of Transportation for the City of Kansas City, Missouri. Rule 15(a) of the Federal Rules of Civil Procedure provides certain time limitations during which a party may amend his pleadings as a matter of right. Thereafter, a "party may amend his pleadings only by leave of court . . . and leave shall be freely given when justice so requires."

In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) the Supreme Court emphasized that leave to amend should be granted unless the party opposing the request demonstrates a significant reason not to do so.

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Defendant argues in opposition to the requested amendment that (1) the alleged acts or omissions of these three individuals involved the exercise of judgment and are

therefore a discretionary function; the doctrine of official immunity bars recovery in such an instance; (2) the proposed defendants cannot be held vicariously liable for the acts of their subordinates because the doctrine of respondeat superior does not apply to public officials; and (3) official immunity has not been waived by reason of the purchase of insurance.

None of these arguments demonstrate that the requested amendment is so clearly futile that it should not be allowed. For instance, the record at this stage of the case is insufficient to determine whether the alleged acts or omissions by the three proposed individual defendants were discretionary or ministerial. Missouri law permits suit against a public officer for violation or neglect of a ministerial duty. *Jackson v. Wilson*, 581 S.W.2d 39, 42–43 (Mo. App.1979). Also, public officials may be liable for negligent hiring of subordinates, for directing and encouraging negligent acts of subordinates, or for personally cooperating in negligent acts. See, *Fidelity & Casualty Co. of New York v. Brightman*, 53 F.2d 161, 166 (8th Cir.1931). In *Newson v. City of Kansas City*, 606 S.W.2d 487, 491 (Mo.App.1980) the Missouri Court of Appeals remanded the case to the lower court so plaintiff would have the opportunity to amend the petition "to assert the provisions of § 71.185 [purchase of insurance by a municipality] as a waiver of immunity by defendant employee . . . of suit in tort for liability from the exercise of [a] governmental function."

Also, the claims against the proposed defendants arise out of "the same transaction, occurrence, or series of occurrences" as are involved in the original suit against the city. Rule 20, Fed.R.Civ.P. Certain questions of law and fact common to the issues involved in the case filed against the city, upon which discovery has already been done, will be involved in a suit against the individual defendants. Therefore, it would be economical to completely resolve this dispute in this case.

Because defendant has failed to establish a reason why the liberal amendment policy of Rule 15(a), Fed.R.Civ.P., should not be followed, plaintiff's motion for leave to file an amended complaint is granted.

*Defendant City of Kansas City's Motion for Summary Judgment*

This action arose out of a traffic collision occurring at the intersection of 57th and Main Streets on July 25, 1980, in which the plaintiff was driving her vehicle southbound on Main and another driver was eastbound on 57th Street. Plaintiff has alleged that at the time of the collision, the traffic control signals were flashing amber for traffic on Main and flashing red for 57th Street traffic.

The defendant's motion for summary judgment states that "[t]he gravaman of plaintiff's allegations against this defendant is that the traffic signal system at 57th and Main Streets in Kansas City, Missouri was dangerous, defective and unreasonably unsafe." Defendant Kansas City contends plaintiff cannot recover damages from it for negligent placement, operation, or maintenance of a traffic signal because traffic control is a governmental function. *Auslander v. City of St. Louis*, 332 Mo. 145, 56 S.W.2d 778 (Mo.1932); *Watson v. Kansas City*, 499 S.W.2d 515 (Mo.1973). The defendant denies that it waived sovereign immunity by the purchase of liability insurance. At oral argument, plaintiff's counsel stated that plaintiff no longer contends that the city has waived sovereign immunity by the purchase of liability insurance.

Plaintiff bases her claims against the City of Kansas City on the common law duty of a city to keep its streets reasonably safe for travel. Paragraph 10 of plaintiff's complaint states:

10. At the time of the collision, and for an unreasonably long period of time before that, the roadway upon which plaintiff was traveling was dangerous, defective and unreasonably unsafe due to a combination of factors, including but not limited to the following:

a. Vision and visibility were obstructed so that traffic southbound on Main Street was unable to observe

eastbound traffic on 57th Street, and conversely so that traffic eastbound on 57th Street was unable to observe southbound traffic on Main Street.

b. The normal speeds traveled by vehicular traffic on 57th Street were such that the signal faces of the traffic signal system used at the intersection were not continuously visible to east-bound traffic for the distance required by the laws of the state of Missouri for traffic at such speeds.

c. Existing traffic control devices, particularly those provided for east-bound 57th Street traffic, were ob-scured and obstructed by trees, shrubs and limbs, as well as other components of the traffic signal system, and were therefore not an effective means of eliminating the hazard and danger.

d. Lack of advance warning and marking of upcoming and obstructed traffic signals at the intersection, for the benefit of eastbound 57th Street traffic.

e. Due to the grade, normal speeds, visual obstructions, surrounding usage and lack of advance warning of the traffic signal system, vehicles east-bound on 57th Street approaching the intersection were induced to enter the intersection in violation of the traffic signal indication to stop.

f. Failure to devise, locate, con-struct, maintain and keep unobscured signs or traffic control devices as were necessary and reasonable to give east-bound motorists reasonable notice, warning or indication of the danger at the intersection.

This Court has jurisdiction over this case because the parties are residents of differ-ent states. "[E]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In this case the par-ties agree that Missouri law governs.

Plaintiff recognizes that regulation of traffic by a city is a governmental function

to which sovereign immunity applies. See *Auslander, supra, Blackburn v. City of St. Louis,* 343 Mo. 301, 121 S.W.2d 727, 730 (Mo.1938); *Hiltner v. Kansas City,* 293 S.W.2d 422 (Mo.1956); *Prewitt v. City of St. Joseph,* 334 Mo. 1228, 70 S.W.2d 916 (1934); and *Gillen v. City of St. Louis,* 345 S.W.2d 69 (Mo.1961). Plaintiff seeks to avoid these authorities by attempting to identify with the Missouri rule that a city may be held liable if it does not exercise ordinary care to keep its streets in reason-ably safe condition for travel. *See, Henson v. Kansas City, Mo.,* 277 Mo. 443, 210 S.W. 13 (Mo.1919); *Glasgow v. City of St. Joseph,* 353 Mo. 740, 184 S.W.2d 412 (Mo.1945); and *German v. Kansas City,* 512 S.W.2d 135 (Mo.1974). According to plaintiff, a combi-nation of factors—serious obstructions to visibility of the traffic lights, lack of ad-vance warning on 57th Street of the light at Main Street, and the city's failure to properly install and maintain the traffic lights—rendered the intersection of 57th and Main Streets unsafe for travel.

■ The fatal flaw in plaintiff's liability theory is that Missouri courts have restrict-ed a city's common law liability for failing to keep the roadway safe to situations where the physical condition of the roadway caused injury. Regardless of how plaintiff presents the facts of her case, liability is premised on the failure of the traffic lights at this intersection to perform as intended. Neither plaintiff's arguments nor authori-ties convince the Court that a Missouri court would find Kansas City liable under these circumstances.

*Auslander v. City of St. Louis,* 332 Mo. 145, 56 S.W.2d 778 (Mo.1932) is the leading Missouri case establishing that a city's maintenance and operation of traffic sig-nals is a governmental function. In *Aus-lander* the plaintiff was injured in an auto-mobile collision which was allegedly caused by the city's failure to replace a burned-out light bulb in a traffic signal at an intersec-tion. It was undisputed that the city had notice that the signal was not working properly and failed to do anything to cor-rect the problem. The Supreme Court of Missouri held:

[W]e are constrained to hold that *the maintenance and operation* by the city of automatic stop and go signals at street intersections for the purpose of regulating traffic and tending to promote safety is an exercise by the city of its governmental power, and for negligence in this respect the city cannot be held liable in damages.

*Id.* 56 S.W.2d at 780 (emphasis added).

■ Sovereign immunity protects a Missouri city from liability for negligence in situations where for one reason or another a traffic sign or signal has become obscured. In *Hiltner v. Kansas City,* 293 S.W.2d 422 (Mo.1956) plaintiff was struck by an automobile while in a pedestrian safety zone. A vertical metal post and reflector sign had been installed to warn drivers of the existence of the pedestrian safety zone and also to protect persons using street cars. Before plaintiff's injury, the signpost had been struck by a vehicle so that the sign and post were no longer visible to drivers and no longer protected the safety zone. Plaintiff alleged that the safety zone was in an inherently dangerous condition which was known to the city. In an effort to avoid the *Auslander* rule, she contended that her liability theory was negligent maintenance of the safety zone, not negligent maintenance of a traffic signal. The Missouri Supreme Court concluded that "[t]he only negligence of which the city is charged is that of negligent maintenance of the safety zone in its use as a device for the regulation of traffic, and for that negligence the city is not liable in tort." *Id.* at 426.

Also in *Prewitt v. City of St. Joseph,* 334 Mo. 1228, 70 S.W.2d 916 (Mo.1934) plaintiff was injured when his motorcycle struck a stop sign fastened to the street at an intersection. "[A]t the time, the sign had the appearance of rusty iron. It had been in that condition for some time. Furthermore, after rains, debris would be around the sign." *Id.* at 70 S.W.2d 917. Plaintiff charged that the city was negligent in "maintaining the sign on the street in an obscured condition." *Id.* at 70 S.W.2d 916–

17. Recovery was denied because "the city is not liable for the performance of its governmental duty to regulate traffic by the location and maintenance of the sign at the intersection." *Id.* at 70 S.W.2d 918.

In *Blackburn v. City of St. Louis,* 343 Mo. 301, 121 S.W.2d 727 (Mo.1938), a pedestrian was struck when an automobile was deflected from its course after colliding with ellipsoidal "traffic buttons" placed in the street to mark a safety zone. The buttons were alleged to be in disrepair, dirty, unpainted and without proper reflectors. The buttons were authorized by ordinance and the ordinance authorized—but did not require— them to be painted and have reflectors. Because of the location and condition of the buttons plaintiff argued that St. Louis had violated its duty to keep its sidewalks and streets in a reasonably safe condition. The court held:

> [I]t could reasonably be said that the device used (traffic button complying with the specifications of the ordinance), "itself and alone", in not only some way but solely "served or operated to regulate traffic." We hold that this factor, which distinguished this case and the Prewitt Case from the Mengel Case [*Mengel v. City of St. Louis,* 111 S.W.2d 5 (Mo.1937) involving a collision with a concrete slab formerly the base of a traffic signal] makes the maintenance of the device an exercise of governmental rather than corporate function.

*Blackburn,* 121 S.W.2d at 730.

Again in *Gillen v. City of St. Louis,* 345 S.W.2d 69 (Mo.1961) the court refused to hold a city liable for failing to keep its sidewalks or streets safe when the alleged negligence involved failure to properly maintain devices intended to regulate traffic. In *Gillen,* plaintiff, while on a public sidewalk, was injured by a falling traffic sign. Plaintiff, like the plaintiff here, argued that St. Louis was liable because it had breached its duty to keep its streets and sidewalks reasonably safe and free of dangerous conditions. The court stated that "[i]t is well settled in this state that regulation of traffic is a governmental function."

*Id.* at 71–72. St. Louis ·was immune from plaintiff's claim because "the petition shows upon its face that the alleged negligent acts complained of in the construction, maintenance and control of the mentioned traffic sign were committed in the performance of a governmental function for which the City is not liable in tort." *Id.* at 73. The court refused to follow plaintiff's safe-condition-of-the-roadway decisions where "the obstruction was not an instrumentality used solely for the direction of traffic, or the defect did not pertain to the use of the instrumentality in directing traffic." *Id.* at 71.

The two most recent Missouri Supreme Court decisions in this area indicate the continuing vitality of the *Auslander* rule. In *Watson v. Kansas City,* 499 S.W.2d 515 (Mo.1973) plaintiff was seriously injured when she "overshot" a T-intersection and continued down the side of a hill. The court held that the installation of a traffic device or sign warning of the T-intersection was a governmental function. Therefore, the city could not be held liable for its alleged negligence in not providing warning of the T-intersection.

> [T]he placing (*or failure to place*) of a sign on North Manchester to warn that the intersection in question was a T-intersection *is a form of traffic regulation, direction, or control, and hence a governmental function.* It follows that there would be no liability on defendant for its alleged negligence in failure to install such a sign . . . .
>
> *We have not overlooked the well-settled rule that it is the duty of a city to exercise ordinary care to keep its streets in a reasonably safe condition for travel and that it is liable in damages for its failure to do so. In this case, however, there is no contention that there was any defect or obstruction in the streets that made up this intersection and hence this rule would have no application.*

*Id.* at 518 (emphasis added).

Although the Missouri Supreme Court in *German v. Kansas City,* 512 S.W.2d 135 (Mo.1974) affirmed a judgment against Kansas City, it emphasized that a city's duty to keep its streets in a reasonably safe condition relates only to the physical condition of the streets. The plaintiff in *German,* was involved in a head-on collision when he failed to note that the roadway had changed from four lanes to two lanes in a construction area. Plaintiff alleged that the city had knowledge of the danger created by the lane change, but failed to provide adequate warning. At trial the evidence showed that there were two signs warning of the lane change, but both signs were obscured by dirt. The court noted that Kansas City had a duty to keep its streets in a reasonably safe condition for travel and that it may be held liable for negligence arising out of the acts of its employees engaged in maintaining and repairing the streets. Under the circumstances in *German,* Kansas City could be held liable for failure to give adequate warning of the lane change.

> [U]nder the law of this state 'it is the primary and non-delegable duty of the city to exercise ordinary care to keep its streets in a reasonably safe condition for travel,' * * * and to this activity the doctrine of immunity from liability for torts does not apply. The above rule was developed in cases which arose out of situations wherein the plaintiff claimed to have been injured as the result of the municipality failing to keep the streets in a reasonably safe condition for travel. However, it is also well established that a city is liable for its torts arising out of the acts of its employees while engaged in constructing its streets, [or in maintaining and repairing the streets] to make them reasonably safe for travel. * * * Therefore, a city must act with due care, not only to keep the streets free from dangerous conditions but· also in doing any act to repair them and maintain them open for traffic, and under the well-established law of Missouri it is liable for its torts resulting from activities done in carrying out these duties regardless of the name by which they may be called." And, as stated in *Auslander v. City of St. Louis, supra,* 56· S.W.2d l.c., 782: "There

is a difference * * * between the physical condition of a street and its use by the public. *The keeping of street in a condition reasonably safe for travel thereon has reference to its physical condition, and is a different matter than the regulation of traffic on such street."*

*German,* 512 S.W.2d at 142 (emphasis added).

■ *Auslander, Hiltner, Prewitt, Blackburn, Gillen, Watson* and *German,* illustrate the crucial distinction in Missouri between a city's duty to keep the physical condition of streets reasonably safe for travel and a city's responsibility to regulate traffic on its streets. Sovereign immunity protects a city from liability for its negligence in traffic regulation but not for its failure to maintain the physical condition of streets. Efforts to extend a city's liability to negligence in maintaining traffic control devices, even when those devices also obstruct the roadway, have been uniformly rejected.

The Missouri decisions plaintiff relies on do not suggest that Missouri is about to abandon its adherence to the *Auslander* line of cases. For instance, in *Glasgow v. City of St. Joseph,* 353 Mo. 740, 184 S.W.2d 412 (Mo.1945), the city was found liable for permitting silt from a field adjoining the street to accumulate at a particular place on the street which after a rain became slippery and dangerous. Plaintiff was killed when his vision was obscured by mud splashing on his windshield causing him to lose control of his car and collide with an approaching vehicle. The court found that the city had notice of the defect and affirmed the judgment against the city for negligence. "[A] municipality is liable, generally speaking, for a negligent failure to keep its streets in a reasonably safe condition for the traveling public." *Id.* 184 S.W.2d at 414.

In *Henson v. Kansas City, Mo.,* 277 Mo. 443, 210 S.W. 13 (Mo.1919) "perpendicular banks or walls of earth, or clay from 10 to 12 feet high" were created when a street was graded. The court held:

The negligence consisted in leaving this clay bank overhanging the pathway used by pedestrians, for some six weeks, or two months, without bracing it, or without in some wise giving notice to the public of its dangerous character. For, while as forecast above there is lodged in the city a discretion as to the time at which and the place through which it makes improvements, yet when this discretion has been exercised and the street has been made, the duty of maintaining it in repair so that it will not become a menace to the public is not governmental but ministerial. . . .

And an action will lie for injuries caused by dangerous defects in a street, which defects the city suffers to remain after reasonable notice of the existence thereof. . . .

*Id.* at 210 S.W. at 16 (citations omitted).

Plaintiff's reliance on *German, Glasgow,* and *Henson* to support her claim against Kansas City in this case is misplaced. In each of these cases the city was held liable because a condition in the roadway or "so near to the traveled portion of the street that a pedestrian, by accidental misstep or a vehicle occupant by a slight inadvertent deviation, is caused to be injured." *Watson,* 499 S.W.2d at 518. In *German,* although traffic signs were obscured, it was as a result of mud splattered on them from construction on the roadway. Here no condition on the roadway caused the traffic signals to not function as intended.[1]

---

1. In his concurring opinion, Judge Seiler indicated that the majority was "splitting hairs" when it distinguished the fact situation in *German* from *Watson.* "I am unable to perceive any real distinction in principle between the city's failure to warn the westbound plaintiff that the lanes north of the median carried two-way traffic, and the city's failure to warn the plaintiff in *Watson v. Kansas City,* 499 S.W.2d 515 (Mo. banc 1973) that the street on which

she was driving came to a dead end at a "T" intersection . . . . In my judgment the view adopted in the present case is the more enlightened and sensible one and comports with the realities of what motorists have become accustomed to expect in the way of warnings from those who have charge of the streets and highways over which they are driving." 512 S.W.2d at 148–49. Because Judge Seiler's comments were in a concurring opinion, not in

Plaintiff states that Kansas City had adopted the Manual on Uniform Traffic Control Devices (MUTCD), which was developed by the United States Department of Transportation. Among other things, the Manual provides specific standards for the installation and maintenance of automatic traffic signals. Plaintiff argues that the failure of city traffic department personnel to follow the Manual's requirements was a ministerial act for which liability could result. Plaintiff relies on cases from the States of Washington, Texas, Kansas and Wyoming.

■ Kansas City's adoption of the MUTCD does not make the city liable for installation or maintenance of traffic signals in violation of the Manual. In *Bean v. City of Moberly,* 350 Mo. 975, 169 S.W.2d 393, 397 (1943) (citations omitted), the Court said:

> [M]unicipalities are not liable for a breach of duty with respect to their governmental functions . . . and the enactment and enforcement of ordinances is a governmental function. . . . Consequently, it has become definitely settled that a city is not civilly liable for failure to enforce its ordinances. . . . By the same reasoning tort liability cannot be imposed on a municipality for failure to observe the requirements of its own ordinances . . . even though the ordinances may become the standard of care and the measure of liability so far as the conduct of members of the general public are concerned.

See also *Auslander, supra,* 56 S.W.2d at 782.

■ Furthermore, the negligent performance of a ministerial act which causes traffic signals not to function as intended does not create liability for a city. See *Auslander, supra* where failure to replace a burned-out light bulb in a traffic signal caused a collision.

The doctrine of governmental immunity has been under attack in Missouri. See *Jones v. State Highway Comm'n,* 557 S.W.2d 225 (Mo.1977) and § 537.600 R.S.Mo.

(1978). Some might argue that nonliability for traffic regulation is outmoded because the conditions which gave rise to the rule have changed. Early in the automobile era the primary means of traffic control was a policeman on the corner. Even after the number and speed of vehicles increased causing some cities to turn to mechanical traffic control devices, police retained the responsibility for maintenance of these traffic control devices. *Prewitt,* 70 S.W.2d at 917 and *Auslander,* 56 S.W.2d at 779. Concern about protecting the discretionary freedom of the police might be thought to be less compelling when traffic control is automatically achieved by sophisticated devices operated and maintained by a city department other than the police. However, if changing conditions call for a reexamination of the *Auslander* rule it must be done by the Missouri General Assembly or a Missouri court, not by this Court.

> "This whole doctrine of governmental immunity has been increasingly criticised. However, such non liability is based not merely on the ancient view that the king can do no wrong, as frequently suggested; but also upon the principle that public officers have no authority to bind the sovereign (the whole people) except such as is given them by specific constitutional and statutory provisions. The general rules of respondeat superior cannot be applied to them without opening up unlimited possibilities for wasteful and dishonest dissipation of public funds. While the complexity of modern government may require a relaxation of present rules of absolute nonliability, undoubtedly this is a matter for the Legislature (which must authorize the collection and disbursement of public funds) to provide in the interest of more complete justice to the individual but under strict regulations and with very definite limitations to protect the public interest."

*Gillen v. City of St. Louis,* 345 S.W.2d at 73–74 (quoting *Brown v. City of Craig,* 168 S.W.2d 1080, 1083 (1943)).

---

the majority opinion, they illustrate that the majority of the Missouri Supreme Court continues to distinguish between liability for negli-

gent maintenance and operation of traffic control devices and liability for negligent maintenance of the physical condition of the roadway.

For the reasons stated herein, the City of Kansas City, Missouri is shielded from any negligent acts or omissions regarding the maintenance or operation of traffic signals by the doctrine of governmental immunity.

Therefore, Kansas City's motion for summary judgment should be and is hereby granted.

IT IS SO ORDERED.